IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENT COLLINSON, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 12-6114 |
| v. | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| Defendants. | : | |

MEMORANDUM

Jones, II, J.                                                                                          October 18, 2013

## I.    Introduction

In this consolidated case, Plaintiff Brent Collinson alleges Defendants violated his civil rights through Philadelphia police officer's use of excessive force on Plaintiff and by the Philadelphia Police Department's implementation of a policy that causes a "systematic failure to train, supervise, and/or discipline police officers" regarding officers' use of force. (Comp. II ¶ 2). Plaintiff claims this policy violates his federal civil rights and that it interferes with his ability to pursue his § 1983 claims. (*Id.* at ¶¶ 51, 57, 59). Plaintiff also asserts state law claims of: assault; battery; intentional infliction of emotional distress; interference with state constitutional rights; negligence; gross negligence; and negligent hiring, training, retention, and supervision.[1] (*Id.* at ¶ 62). Plaintiff brings these claims pursuant to 42 U.S.C. §§ 1983, 1985, 1988 and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments. (*Id.* at ¶¶ 51, 55, 57, 59, 62).

---

[1] Plaintiff also included a claim for false arrest in both Complaints (Compl. I ¶ 29; Compl. II ¶ 62), but later withdrew this claim in a footnote in his Opposition to Defendants' Motion to Dismiss (Pl.'s Opposition to Defs.' Mot., p. 12, n. 10).

1

Plaintiff filed the original Complaint on May 11, 2011 against the City of Philadelphia, police officer John Crichton, ABC, Inc. (1-5), and John and Jane Does (1-5). ("Collinson I") (Compl. I, 2:11-cv-03095-CDJ, Dkt. No. 1). Plaintiff later filed a second Complaint on October 26, 2012 against the City of Philadelphia, the Police Commissioner, and nineteen police officers, including Officer Crichton ("Collinson II"). The two cases were later consolidated.

Plaintiff alleges the following: Officer John Crichton assaulted him, other officers were witnesses to the incident, and the Philadelphia Police Department has a policy in place that effectively withholds important information about the incident from both the Police Department Internal Affairs Bureau and the Plaintiff. (Compl. I ; Compl. II). Defendants have filed a Motion to Dismiss for Failure to State a Claim. (2:12-cv-06114-CDJ, Doc. 6).

## II. Background

### a. Factual Background

For purposes of assessing Defendants' Motion to Dismiss, the Court accepts all facts alleged by Plaintiff in his October 26, 2012 Complaint as true (Compl. II, 2:12-cv-06114-CDJ Doc. 1). On September 5, 2009, Plaintiff was released from police custody following an arrest for disorderly conduct and public intoxication. (Compl. II, Ex. B). Plaintiff was outside the police station when Officer Crichton came out and physically assaulted Plaintiff, hitting him in the face and knocking him to the ground, fracturing and dislocating his elbow. (Comp. II ¶¶ 22-24). Defendants characterize the incident differently, claiming that after his release, Plaintiff became unruly, yelling profanities, and sat on the hood of a police car. (Use of Force Report, Compl., Ex. C). Plaintiff then swung a milk crate at the police officers. (*Id.*). Officer Crichton

"took down" Plaintiff onto the ground to detain him. (*Id.*). Defendants claim the officer's actions were lawful and proper. (Answer to Pl.'s Am. Compl. ¶ 1).

Plaintiff then told Officer Crichton he was badly injured and Crichton went back into the police station. (Comp. ¶ 25). Plaintiff then called 911. (*Id.* at ¶ 26). In the following minutes, police radio received the 911 call and dispatched an officer to respond to the call. (*Id.* at ¶¶ 27-28). Defendants Officer Taylor and Officer Collier responded. (*Id.* at ¶ 29). Approximately twenty minutes later, Defendant Officer Maiorano reported an "assault on police" by Plaintiff to dispatch. (*Id.* at ¶ 30). Defendant Lieutenant Gross then called Police Dispatch to amend dispatch's earlier call, and requested an officer to report to Plaintiff's location to respond to Plaintiff's 911 call. (*Id.* at ¶ 31). Plaintiff was charged with aggravated assault, simple assault, and possession of an instrument of crime (Pl.'s Opposition to Defs.' Mot. p. 1). Plaintiff pled no contest to disorderly conduct.[2] (*Id.* at pp. 1, 13).

Through discovery in the original action, Plaintiff learned there were additional witnesses to the incident, even though Defendants asserted that Officers Crichton and Graner were the only witnesses. (Compl. II ¶¶ 33, 35, 37). During depositions on September 20, 2012, Defendants Lieutenant Gross, Officer Taylor, and Officer Collier stated that they witnessed the incident, but they are not listed in any of the paperwork related to the incident. (*Id.*). Lieutenant Gross indicated that he was not listed as a witness due to the police department's Overtime Management Policy which, in part, states, "[p]latoon commanders will be required to review and initial all arrest and investigative reports, including PARS reports, to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed." (Compl. II ¶¶ 1, 36, Ex. A). Plaintiff asserts that ensuring a "successful outcome" means that

---

[2] But see Pl.s' Opposition to Defs.' Mot., n.1 where Plaintiff notes that the docket shows that he pled guilty to disorderly conduct. Plaintiff claims he "did not agree with the facts as stated by the prosecutor" and told this to the trial court during the plea hearing and the court recognized that Plaintiff was "not contesting the facts."

police use the policy to manipulate the system to secure a finding in favor of the City and Police Department. (*Id.* at ¶ 1). Plaintiff maintains that this policy undermines the pursuit of his claims because it allows the City and Police Department to withhold the names of witnesses who are potential defendants, simply because the platoon commander (here, Lieutenant Gross) deems those other witnesses not "necessary for the successful outcome of the case." (Compl. II ¶¶ 57, 59).

Plaintiff also asserts that Defendants have been deceptive in the production of documents related to the incident. (Pl.'s Opposition to Defs.' Mot. p. 6). For instance, a Complaint or Incident Report was filed following the incident, which was allegedly filled out and signed by Defendant Officer Collier. (Compl. II, Ex. E). However, in her deposition, Collier states that she did not fill out the report and that the signature of her name on the form is not her signature. (Compl. II at ¶ 38). Furthermore, Defendant Officer Graner attested that he gave a statement to detectives following the incident. Plaintiff requested this statement in discovery, but the City claims it lost Officer Graner's statement. (*Id.* at ¶ 39; Pl.'s Opposition to Defs.' Mot. p. 5). The City also claims it cannot find the Detective's file. (Pl.'s Opposition to Defs.' Mot. p. 5). Additionally, the Defendants in the original action did not produce requested documents until more than a year after Plaintiff requested them in discovery. (*Id.*).

### b. Procedural Background

Plaintiff filed the original Complaint on May 11, 2011 against the City of Philadelphia, police officer John Crichton, ABC, Inc. (1-5), and John and Jane Does (1-5). (Compl., 2:11-cv-03095-CDJ, Dkt. No. 1). Defendants filed their Answer on June 24, 2011 denying that the incident was improper or unlawful. (Answer ¶ 1). In the Answer, Defendants also presented a

number of affirmative defenses, including the assertion that Plaintiff's claims are barred by the applicable statute of limitations. (*Id.* at pp. 5-6).

Discovery for the original case (Collinson I) began on July 11, 2011. (Pl.'s Opposition to Defs.' Mot. p. 10). Through this discovery, Plaintiff learned of the police department's overtime policy. (Compl. II ¶¶ 1, 36). Because Plaintiff learned of the policy after the discovery deadline, Plaintiff filed this second action against the City of Philadelphia, the Police Commissioner, and nineteen police officers, including Officer Crichton, alleging the policy violates his civil rights because it encourages the police to withhold information and further encourages excessive use of force by police officers (Compl. II, ¶¶ 3-4; Compl. II, p. 7, n.3). This Complaint was filed on October 26, 2012. (Compl. II, Doc. 1). Defendants did not file an Answer to this Second Complaint. (*See* Docket Report for 2:12-cv-06114-CDJ).

On November 20, 2012, Plaintiff filed a Motion to Consolidate the original case with this second case, because both actions arose from the same incident. (Pl.'s Mot. to Consolidate, 2:12-cv-06114, Dkt. No 4). On December 12, 2012, Defendants filed a Motion to Dismiss that is currently before this Court. (Docketed only under case number 2:12-cv-06114-CDJ, Dkt. No. 6). Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss on December 24, 2012. (2:12-cv-06114-CDJ, Doc. 7). Plaintiff claims that in the Collinson I case, Defendants never fully complied with the discovery requirements because they did not inform Plaintiff of additional witnesses to the incident and because they did not produce all of the documents requested by Plaintiff. (Pl.'s Opposition to Defs.' Mot. p. 2).

On May 9, 2013, this Court granted a motion to consolidate Plaintiff's two cases. (Order of May 9, 2013, 2:12-cv-06114-CDJ, Doc. 8).

5

Currently pending before this Court is Defendants' Motion to Dismiss for Failure to State a Claim filed in the second action on December 12, 2012.

### III. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ([A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.) (internal quotation marks omitted).

### IV. Discussion

In the Motion to Dismiss presently before this Court, Defendants argue Plaintiff's Complaint should be dismissed because his claims are barred by the applicable statute of limitations, by the doctrine of *Heck v. Humphrey*, and because Plaintiff lacks standing for injunctive relief. The Court considers each of Defendants' arguments separately.

### a. Whether Plaintiff's Claims Are Time-Barred

Defendants assert that Plaintiff's claims are time-barred because Plaintiff did not bring them within the applicable statute of limitations. (Defs.' Mem. of Law p. 8). Here the parties agree that the applicable statute of limitations is two years. *See* 42 Pa. C.S.A. §5524. Defendants claim Plaintiff must have brought the action within two years after the date of the incident, which is September 5, 2009; however, Plaintiffs brought this action on October 26, 2012. (*Id.*).

Plaintiff asserts, *inter alia*, this Court should not hear Defendants' statute of limitations argument at this time when it considers Defendants' motion to dismiss because "it is not applicable based upon the face of the complaint." (Pl.'s Opposition to Defs.' Mot. p. 2). Federal Rules of Civil procedure typically require affirmative defenses be pled in Defendant's answer, but the Third Circuit permits "a limitations defense to be raised by a motion under Rule 12(b)(6)," if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir.2002) (citations omitted). However, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis of dismissal of the complaint under Rule 12(b)(6)." *Id.* Although both parties acknowledge that there is a two-year statute of limitations for civil rights violations pursuant to Section 1983, it is not apparent from the face of the Complaint when the Statute of Limitations would begin to run. This is, in part, because the Plaintiff alleges that some of his injuries stem from Defendants employment of a Policy that was not discovered by Plaintiff until 2012. This Court finds that the Complaint, on its face, does not show Plaintiffs' claims are time-barred. Thus, this Court will not consider the Statute of Limitations defense at this time.

### b. Whether Plaintiff's Claims Are Barred Under the Doctrine of *Heck v. Humphrey*

Defendants assert that, by raising his claims, Plaintiff is impliedly challenging the validity of his conviction of disorderly conduct, and thus, his claims are barred by the doctrine found in the United States Supreme Court case *Heck v. Humphrey.* (Defs.' Mem. of Law, p. 10). In *Heck*, the Supreme Court held that when a convicted plaintiff seeks damages in a § 1983 suit,

> the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

Defendants claim that Plaintiff cannot seek damages for an incident that is related to a valid conviction because his claims necessarily call into question the validity of that conviction. (Defs.' Mem. of Law, p. 10). Criminal convictions must be challenged using state and federal habeas remedies, not through a § 1983 claim. (*Id.*).

Plaintiff argues *Heck v. Humphrey* is inapplicable because his claims do not challenge the validity of his conviction for disorderly conduct. (Pl.'s Opposition to Defs.' Mot., p. 2). Plaintiff asserts that he is only challenging the inappropriate use of excessive force and the violation of his civil rights through use of the Policy. (*Id.* at 12-13). Plaintiff notes that many courts have accepted that there can still be valid claims of use of excessive force during an arrest and a conviction that are valid. (*Id.* at 13); *see also Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997) ("[T]his case is different because [plaintiff] does not charge that [defendant] falsely arrested him. Instead, [plaintiff] charges that [defendant] effectuated a lawful arrest in an unlawful manner.").

In *Nelson v. Jashurek*, a case similar to the one before this Court, the Third Circuit considered whether the doctrine in *Heck* barred Plaintiff's § 1983 claim relating to injuries inflicted by an officer during Plaintiff's arrest. 109 F.3d 142 (3d Cir. 1997). In determining whether *Heck* applied, the Third Circuit looked to the elements of the underlying crime for which Plaintiff was convicted (resisting arrest) and whether Plaintiff's § 1983 claim could coexist with the lawful conviction or whether the claim necessarily called into question the validity of that conviction. *Id.* at 145-46 (holding that it was possible for excessive force to be used in a lawful arrest, meaning Plaintiff's claim did not imply invalidity of his conviction). This Court will apply the same analysis to determine if the doctrine in *Heck v. Humphrey* bars Plaintiff's claims.

Plaintiff was convicted of disorderly conduct for engaging in fighting. (Pl.'s Opposition to Defs.' Mot., pp. 1, 13). The applicable statute sets out the elements of this crime as:

> ***Disorderly Conduct***
>
> **(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> (2) makes unreasonable noise;
> (3) uses obscene language, or makes an obscene gesture; or
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S.A. § 5503(a).

Plaintiff asserts § 1983 claims for use of excessive force and for an improper policy that encourages this behavior and "manipulates the system" to withhold material information and evidence from plaintiffs suing the City and its officers. (Comp. II ¶¶ 2, 51, 57, 59). Plaintiff also asserts state law claims of: assault; battery; intentional infliction of emotional distress; interference with state constitutional rights; negligence; gross negligence; and negligent hiring,

training, retention, and supervision. (*Id.* at 62). None of these claims negate or call into question any element of the crime of disorderly conduct and does not question the validity of Plaintiff's conviction. *See Garrison v. Porch*, 376 F.App'x 274 (3d Cir. 2010) (holding that arrestee's § 1983 and state law claims were not barred by the *Heck* doctrine despite his guilty plea to assaulting a police officer). Thus, the doctrine found in *Heck v. Humphrey* does not bar Plaintiff's claims.[3]

### c. Whether Plaintiff Lacks Standing for Requested Injunctive Relief

A plaintiff must have Article III standing to bring his or her claims in federal court. The three requirements of standing are: 1) an injury that is concrete and particularized and actual or imminent; 2) the injury is fairly traceable to defendant's conduct; and 3) it is likely that a favorable outcome would redress the injury. *Doe v. National Bd. of Medical Examiners*, 210 F.App'x 157, 159 (3d Cir. 2006); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "Mere speculation that the requested relief would remedy the alleged injury is not sufficient to establish standing." *Scott v. Diguglielmo*, 615 F.Supp.2d 368, 372 (E.D. Pa. 2009) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 618 (1973)).

Additionally, when a plaintiff is requesting injunctive relief, "a plaintiff must show that he or she is likely to suffer *future* injury from the defendant's illegal conduct" and past illegal acts will not suffice unless plaintiff is also experiences "continuing, present adverse effects." *Doe v. National Bd. of Medical Examiners*, 210 F.App'x 157, 159-160 (3d Cir. 2006); *City of Los Angeles v.* Lyons, 461 U.S. at 102, 103 (1983).

Defendants claim that Plaintiff lacks Article III standing to request injunctive relief because "there is no tangible likelihood that he will be subjected to the complained of conduct in

---

[3] As noted previously, Plaintiff withdrew his false arrest claim in a footnote in his response to Defendants' Motion to Dismiss (Plaintiff's Opposition, p. 12, n. 10). This claim would likely be barred by the *Heck v. Humphrey* doctrine because it claims the arrest was unlawful, which is contrary to Plaintiff's conviction.

the future." (Defs.' Mem. of Law, p. 11). Defendants claim that Plaintiff cannot show that he will again encounter the policy in any way in the future. (*Id.* at 14). Because the event already happened in the past, Defendant argues, Plaintiff no longer has a personal interest in the policy because it is impossible to tell if he will be affected by it again. (*Id.* at 11).

Plaintiff, on the other hand, argues that he has standing because the injury caused by the policy is ongoing and continues to affect him. (Pl.'s Opposition at 14). Plaintiff asserts that the policy supports his *Monell* claims and continues to interfere with the current pursuit of his claims. (*Id.*). According to Plaintiff, contrary to what Defendants argue, the injury caused by the policy is not a thing of the past because it is *currently* impeding his claims and will continue to do so in the near future. (*Id.*).

The United States Supreme Court considered this issue in *City of Los Angeles v. Lyons*, where Plaintiff sued the City of Los Angeles and a number of police officers in relation to an incident where police officers applied a "chokehold" on Plaintiff causing him to lose consciousness and causing damage to his larynx. 461 U.S. 95, 97-98 (1983). In addition to tort damages, plaintiff sought an injunction prohibiting police officers from applying chokeholds on civilians. *Id.* The Supreme Court held there was no case or controversy because it was too speculative to say that the plaintiff would likely suffer the same injury in the future. To have standing for injunctive relief, "[Plaintiff] would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning *or,* (2) that the City ordered or authorized police officers to act in such manner." *Lyons* at 105-06. In *Lyons*, there was no official policy that mandated or sanctioned policy officers to use illegal chokeholds

and it would be absurd to assert that all Los Angeles police officer always apply chokeholds. Thus, the Supreme Court held that there was no real and immediate threat of injury present to justify granting injunctive relief.

In *McBride v. Cahoone*, a case in this district, the court noted that "[s]everal courts have persuasively distinguished *Lyons* . . . holding that a plaintiff has standing to pursue claims for injunctive and declaratory relief to combat a pattern of illicit behavior, particularly when the challenged conduct occurs pursuant to an officially authorized policy." 820 F. Supp.2d 623, 634 (E.D. Pa. 2011). In *McBride*, plaintiff sought injunctive and declaratory relief in relation to an alleged violation of his due process rights. Defendants argued that plaintiff lacked standing for injunctive relief because plaintiff failed to demonstrate that it was likely this injury would occur again in the future. *Id.* at 633. The court disagreed and held that plaintiff had standing to seek injunctive relief, noting that question of likelihood of injury being repeated was close, but ultimately holding that court "cannot conclude at this nascent stage of the proceedings that [plaintiff] lacks standing to assert his claims for prospective relief." *Id.* In reaching this decision, the District Court highlighted that "the *Lyons* opinion expressly noted the absence of any written or oral pronouncements by the Los Angeles Police Department sanctioning the unjustifiable application of the chokehold" and that standing analysis changes when an official policy authorizes the conduct. . *Id.* at 634. The *McBride* court concluded that "the presence of an official policy greatly increases the likelihood that any individual, including [plaintiff], will imminently suffer the very same deprivation of liberty [plaintiff] claims to have suffered in the past." *McBride v. Cahoone*, 820 F. Supp. 2d 623, 635 (E.D. Pa. 2011). Taking Plaintiff's factual allegations as true, Plaintiff experiences current adverse effects due to the use of the Policy which allegedly sanctions the withholding of material information regarding the incident and

possible witnesses, thus hindering Plaintiff's efforts to successfully pursue his claims. Additionally, because this behavior is sanctioned by an official policy, there is a likelihood that the injury will be repeated in the future.

Thus, while Plaintiff might lack standing for injunctive relief for the alleged assault and battery in violation of his federal civil rights, Plaintiff has standing to seek an injunction on the use of the Policy allegedly authorizing the police department to withhold material information about incidents.

## V. Conclusion

The purpose of consolidation is to streamline cases with similar facts and issues to make the Court's considerations and decisions more organized and efficient. Thus, it would benefit the Court to have all matters related to the incident on September 5, 2009 within the same Complaint. For the foregoing reasons, Defendants' motion to dismiss is denied and the Court grants Plaintiff leave to amend the complaint to include all claims resulting from the incident, including the *Monell* claim related to the Policy. An appropriate order follows.