## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRENT COLLINSON<br><br>                          Plaintiff | CIVIL ACTION |
| Vs. | No.: 12-CV-6114 |
| THE CITY OF PHILADELPHIA, *et al.* | JURY TRIAL DEMANDED |
| Defendants | |

### AMENDED COMPLAINT[1]

## I.    PRELIMINARY STATEMENT

1.    In January 2009, the Philadelphia Police Department adopted a written policy ("the Policy") that undermines the fundamental fairness that is at the heart of the American Criminal Justice System. In pertinent part, that policy states:

> Platoon commanders will be required to review and initial all arrest and investigative reports, including PARS reports[2], to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed.
>
> (See Memorandum (09-01), §III. A. (1), attached as Exhibit "A.")

There can be no doubt that a "successful outcome" means conviction. Therefore, to comply with this policy, police must <u>not</u> identify police witnesses who possess exculpatory information because such witnesses do not "ensure" a conviction.[3]

---

[1] Plaintiff filed a Civil Action Complaint against P.O. Crichton and the City of Philadelphia. (See Docket Number 11-CV-3095.) However, because the defendants in that case did not disclose the Policy and the role played by many of the defendants in the incident until *after* the discovery deadline, plaintiff filed this separate action. The defendants' Motion to Dismiss this Action was denied. However, because the Opinion (Dkt. No. 10) stated that "it would benefit the court to have all matters related to the incident on September 5, 2009 within the same Complaint" and granted "Plaintiff leave to amend," Plaintiff files this Amended Complaint.

[2] As the Court may be aware, the arrest and investigative reports, including PARS reports, are the police paperwork that is typically provided to an accused in a criminal case. It is this police paperwork that helps an accused identify, among others, police witnesses.

[3] Plaintiff first learned of the Policy's existence at a deposition in the related matter that was taken on September 20, 2012. He received a copy of the policy pursuant to a court order in the related matter on October 10, 2012.

To effectuate the Policy, platoon commanders must also withhold from a Citizen accused of a crime exculpatory statements made by officers/investigators. Otherwise, such officers/investigators would be listed in the police paperwork. Because such officers/investigators are not necessary for a conviction, the platoon commander would violate the policy by providing such exculpatory information to a Citizen accused of a crime.

Not only does the Policy trample upon a Citizen's Constitutional rights, it also usurps the authority of the Philadelphia Courts. For example, "[w]hen police personnel are subpoenaed for court on a Scheduled Day Off (SDO), the platoon supervisor shall initiate an immediate review of the case and arrest paperwork to determine the need for the officer's appearance. If it appears that the officer is unnecessary, the supervisor shall contact the Overtime Management Unit ("OMU") to refer the case for their review." (See Exhibit "A," §III E.) In other words, a police supervisor determines who is "necessary." That is the job of defense counsel or the assistant district attorney who issued the subpoena. It is the responsibility of the Court to enforce the subpoena.

The practical effect of the Policy is that the police manipulate the system in an attempt to "ensure... the successful outcome of a case." Those Citizens accused of crimes may never learn the existence of, let alone, the identity of police witnesses who can help their defense. Moreover, if such witnesses are identified, they may never appear in court because a platoon commander or the OMU determined that their testimony was not necessary to ensure a conviction.

2.    Plaintiff believes and therefore avers that the Policy also results in a systemic failure to train, supervise, and/or discipline police officers because it affects, among other things, the Police Department Internal Affairs Bureau's ("IAB") review of an officer's use of force. Anytime an officer is required to use some type of force—i.e. control holds, up to and including the use of Taser, the ASP, the Baton—police officers are required to send Internal Affairs a Use of Force Report along with the police paperwork. That report and the associated paperwork are reviewed by an IAB Captain. The IAB Captain then approves or disapproves of the officer's use of force. By mandating that only officers that are "necessary" to ensure a conviction are listed on the police paperwork, the IAB Captain's review is skewed.

If the IAB Captain disapproves of the use of force despite the rosy picture presented by the Policy, then, and only then, would IAB conduct its own investigation. The IAB investigation would include interviews of all the parties involved and all of the officers who may have been at the scene to make a more informed decision on whether the officer's actions were within

departmental guidelines. However, the IAB investigator would not know about all of the officers who may have been at the scene because the Policy requires that only the witnesses who are necessary to ensure a conviction. Accordingly, the Policy withholds from IAB the same exculpatory information it withholds from Citizens.

3.      Because the Police Department implemented the Policy, which encourages the concerted action of police officers in an effort to withhold material information from the IAB and Citizens, the Police Department adopted, encouraged, and/or, ratified the excessive use of force.

4.      As stated in detail below, the police in this case used excessive force against Plaintiff, Brent Collinson ("Plaintiff"). Had the Police Department not implicitly adopted, encouraged, and/or, ratified a policy permitting the excessive use of force, Plaintiff would not have been injured. Additionally, the defendant, police officers would not have conspired to cover-up the excessive use of force in this case and others. Defendant, the City of Philadelphia ("the City"), would have been able to train, supervise, and discipline, officers with a propensity to use excessive force.

## II.     JURISDICTION

5.      This action is brought pursuant to 42 U.S.C. Sections 1983, 1985, and 1988, 28 U.S.C. §§ 1331 and 1343(1),(3),(4) and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, the Pennsylvania Constitution, and under the Common Law of the Commonwealth of Pennsylvania. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law.

## III.    PARTIES

6.      Plaintiff, Brent Collinson, ("Plaintiff" or "Mr. Collinson") is a resident and citizen of the Commonwealth of Pennsylvania, 1001 N. 2nd Street, Philadelphia, Pennsylvania.

7.      Defendant, City of Philadelphia, ("the City") is a City of the First Class in the Commonwealth of Pennsylvania and a municipal corporation duly existing and organized under the laws of Pennsylvania with offices for service at 1515 Arch Street, Philadelphia, PA 19102. At all times relevant hereto, Defendant, City of Philadelphia, operated under the color of state law in creating and maintaining a Police Department and was the employer of all of the Police Officer Defendants in this action.

8.      Defendant, Philadelphia Police Commissioner Charles H. ("Cmmr. Ramsey"), was at all times relevant to this Complaint, the Commissioner of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. He is being sued in both his individual and official capacities.

9.      Defendant, Lieutenant Michael Gross, Badge No. 270 ("Lt. Gross") was at all times relevant to this Complaint, a Lieutenant of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. He is being sued in both his individual and official capacities.

10.      Defendant, Police Officer David Graner, Badge No.: 4726 ( "P.O. Graner"), was at all times relevant to this Complaint, an Officer of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. He is being sued in both his individual and official capacities.

11.      Defendant, Police Officer Salvatore Maiorano, Badge No.: 6458 ( "P.O. Maiorano"), was at all times relevant to this Complaint, an Officer of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. She is being sued in both her individual and official capacities.

12.    Defendant, Corporal Young, Badge No.: 8087 ( "Cpl. Young"), was at all times relevant to this Complaint, an Officer of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. He is being sued in both her individual and official capacities.

13.    Defendant, Police Sergeant John McGrath, Badge No.: Unkown ( "Sgt. McGrath"), was at all times relevant to this Complaint, a Sergeant of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. He is being sued in both his individual and official capacities.

14.    Defendant, Police Officer Juan Ramirez, Badge No.: 5267 ( "P.O. Ramirez"), was at all times relevant to this Complaint, an Officer of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. He is being sued in both his individual and official capacities.

15.    Defendant, Police Officer Shawneir Collier, Badge No.: 4757 ( "P.O. Collier"), was at all times relevant to this Complaint, an Officer of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. She is being sued in both his individual and official capacities.

16.     Defendant, Police Officer Kenneth Taylor, Jr., Badge No.: 3719 ( "P.O. Taylor"), was at all times relevant to this Complaint, an Officer of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. He is being sued in both his individual and official capacities.

17.     Defendant, Police Sergeant Anthony Burton, Badge No.: 506 ( "Sgt. Burton"), was at all times relevant to this Complaint, a Sergeant of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. He is being sued in both his individual and official capacities.

18.     Defendant, Police Officer John Crichton, Badge No.: 2020 ( "Officer Crichton"), was at all times relevant to this Complaint, an Officer of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. He is being sued in both his individual and official capacities.

19.     Defendants, John Doe, Number One through Ten, are fictitious names of individuals heretofore unascertained that were at all times relevant to this Complaint, Police Officers for the City of Philadelphia and acted under the color of state law. They are being sued in both their individual and official capacities.

20.     At all times material and relevant to this complaint, Defendant, City of Philadelphia, did act through its agents, employees, owners, representative, agents and/or employees while in the course and scope of their employment and/or agency.

21.     At all times referred to herein, Defendants, acted under color of the laws, statutes ordinances, regulations, policies, customs, and usages of the Commonwealth of Pennsylvania, the City of Philadelphia and the Police Department of the City of Philadelphia, and pursuant to their authority as police officers of the City of Philadelphia and its police department.

## IV.   FACTS

22.     At all times referred to herein, Defendants, Cmmr. Ramsey, Lt. Gross, P.O. Graner, P.O. Maiorano, P.O. Tayor, P.O. Collier, Cpl. Young, Sgt. McGrath, P.O. Ramirez, Sgt. Burton, P.O. Crichton, and John Does One through Ten, acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Pennsylvania and the City of Philadelphia and pursuant to their authority as police officers for the City of Philadelphia Police Department, by and through Defendant, the City.

23.     On or about September 5, 2009, in the early morning, plaintiff was released from custody from a city of Philadelphia Police Department police facility (the 6th District) located at or near 235 North 11th Street, in Philadelphia, Pennsylvania.

24.     While plaintiff was outside the 6th District station, Defendant, P.O. Crichton, came out and started beating/battering/assaulting plaintiff, without any legal justification. In fact, P.O. Crichton punched plaintiff in the face and slammed him to the ground.

25.     P.O. Crichton slammed plaintiff to the ground so hard that he fractured and dislocated plaintiff's elbow in addition to causing other injuries.

26.     When plaintiff told P.O. Crichton how bad he was hurt, P.O. Crichton went inside the 6th District building.

27.     Plaintiff called "911."

28.     At 6:04 a.m., Police radio receives plaintiff's 911 call.

29.     At 6:06 a.m., Police dispatch radios for a unit to go to plaintiff's location.

30.     At 6:06 a.m., Defendants, Taylor and Collier, respond to the call.

31.     At 6:22 a.m., Defendant, P.O. Maiorano, called police dispatch and reported an "assault on police," which is what police charged plaintiff with in the underlying criminal case.

32.     At 6:25 a.m., Lt. Gross calls dispatch and makes changes to the 6:06 a.m. radio call.

33.     The police investigation report, 75-49, only identifies <u>two</u> police witnesses, Officer Crichton and Defendant, P.O. Graner. (A true and correct copy of the 75-49 is attached as Exhibit "B.")

34.     Moreover, the Use of Force reports prepared by Defendant, P.O. Graner, and Officer Crichton, only identify <u>two</u> police witnesses—Defendant, P.O. Graner, and P.O. Crichton. (True and correct copies of Defendant, P.O. Graner's, and Officer Crichton's Use of Force Reports are attached as Exhibits "C" and "D.")

35.     Defendants, Lt. Gross and Sgt. Burton, reviewed and signed off on those use of force reports. (See Exhibits "C" and "D.")

36.     On September 20, 2012, more than three years <u>after</u> the incident, Defendant, Lt. Gross, testified that he witnessed the incident. (Prior to Defendant, Lt. Gross', deposition, Plaintiff was not aware that he witnessed the incident.)

37.     Defendant, Lt. Gross, stated that the reason he was not listed on any of the paperwork is because of the Policy.

38.     Defendants, Taylor and Collier, also testified that they witnessed part of the incident. Yet they are <u>not</u> listed as eyewitnesses on any of the police paperwork. (Prior to their depositions, Plaintiff was not aware that they witnessed the incident.)

39.     Moreover, there is a Complaint or Incident Report, 75-48, in regard to this incident that was purportedly signed by Defendant, Collier, and reviewed by Defendant, Cpl. Young. However, Defendant, Collier, testified that she did <u>not</u> prepare that report and that the signature on it is <u>not</u> hers. (A copy of that 75-48 is attached as Exhibit "E.")

40.     Defendant, Graner, testified that he gave a statement to detectives the morning of the incident. Defendant, the City, lost Defendant, Graner's, statement.

41.     The aforesaid assault, battery, and intentional infliction of emotional distress of plaintiff by defendants, was carried out unlawfully, maliciously and/or intentionally.

42.     As a direct and proximate result of the negligent, intentional, unlawful, reckless and malicious acts described above, committed by the individual Defendants, under color of law under their authority as police officers of the City of Philadelphia, and while acting in the course and scope of their employment and pursuant to authority vested in them by Defendant, the City, caused plaintiff to sustain serious and permanent injuries to his body, including but not limited to, injuries to his left arm, left elbow (two surgeries), face, leg and to suffer serious mental anguish, all of which continue indefinitely into the future.

43.     As a further result of this incident, plaintiff has been obligated to receive and undergo reasonable and necessary medical treatment and rehabilitative services for the injuries suffered and to incur various expenses for said treatment and services.

44.     As a further result of this incident, plaintiff has been obligated to receive and undergo reasonable and necessary medical treatment and rehabilitative services for the injuries he has suffered, and to incur various expenses for said treatment and services, and he may incur various reasonable and necessary future medical expenses from the injuries sustained, and defendants, jointly and/or severally, are liable for all of the same.

45.     As a further result of this incident, plaintiff has or may suffer severe actual loss of his gross income.

46.     As a further result of this incident, plaintiff has or may suffer impairment of his earning capacity and power.

47.     As a direct and reasonable result of the aforementioned incident, plaintiff has or may hereafter incur other financial expenses and losses.

48.     As a further result of the aforementioned incident, plaintiff has suffered physical pain, aches, mental anguish, and humiliation, inconveniences and loss of life's pleasures, and he may continue to suffer same for an indefinite time in the future.

49.     As a direct result of this incident, plaintiff has been unable to attend to his daily chores, duties and occupations and may be unable to do so for an indefinite period of time in the future.

50.     As a further result of this incident, plaintiff has suffered an injury which may be in full or part a cosmetic disfigurement which is or may be permanent, irreparable, or severe.

**FIRST CAUSE OF ACTION**
**FEDERAL CIVIL RIGHTS VIOLATIONS**

51.    The allegations set forth in paragraphs one through fifty inclusive, are incorporated herein as if fully set forth.

52.    As a direct and proximate result of all Defendants' conduct, committed under color of state law, Defendants deprived Plaintiff of her rights, privileges and immunities under the laws and the Constitution of the United States; Plaintiffs' right to be free from unreasonable searches and seizures, excessive force, , verbal abuse, to be secure in ones' person and property, and to due process and equal protection of law. As a result, Plaintiff suffered and continues to suffer harm in violation of Plaintiff's rights under the laws and Constitution of the United States, in particular the First, Fourth, Fifth, Sixth, and Fourteenth Amendments thereof, and 42 U.S.C. §1983 and §1985.

53.    As a direct and proximate result of the acts and omissions of all Defendants, Plaintiff endured pain, suffering, emotional harm and financial losses, and was deprived of liberty and property, all to Plaintiff's detriment and loss.

54.    The City of Philadelphia has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

        a.    The abuse of police powers, including but not limited to excessive force, unlawful detention, false arrest;

        b.    The failure of police officers to follow established policies and procedures regarding the completion of police paperwork;

        c.    The failure of the Philadelphia Police Department to maintain proper police reports, including the identity of police eyewitness information;

        d.    The failure of police officers to prevent, deter, report or to take action against the unlawful conduct of other officers under such circumstances as presented herein.

55.    Defendant, the City, failed to properly sanction or discipline officers, who are aware and subsequently conceal and/or aid and abet violations of constitutional rights of

citizens by other police officers, thereby causing and encouraging police, including the individual Defendants, to violate the rights of citizens such as Plaintiff.

56.     By these actions, all Defendants, acting in concert and conspiracy, have deprived Plaintiff of rights secured by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments thereof, and 42 U.S.C. §1983 and §1985.

## SECOND CAUSE OF ACTION
## INJUNCTIVE AND DECLARATORY RELIEF FOR
## CIVIL RIGHTS VIOLATIONS

57.     The allegations set forth in paragraphs one through fifty-six inclusive, are incorporated herein as if fully set forth.

58.     By adopting, permitting, encouraging, tolerating, ratifying or being deliberately indifferent to a pattern, practice and policy pursuant to which defendants unlawfully and improperly withhold exculpatory evidence from police reports, defendants have and will continue to deprive plaintiff and other individuals who come into contact with police of rights guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983 and §1985.

59.     Defendants, by their actions, deprived Plaintiff and other individuals of their rights to life, liberty, and, property consistent with all rights and immunities guaranteed by the Due Process Clause of the Constitution of the United States

60.     By adopting a policy that withholds exculpatory evidence from police reports defendants will continue to deprive plaintiff and others who may come into contact with police of rights guaranteed by the Constitution and 42 U.S.C. §1983 and §1985.

61.     As a result of Defendants' conduct, plaintiff and other individuals other individuals who come into contact with police have suffered and will continue to suffer irreparable harm. There is no adequate remedy at law and the requested declaratory and injunctive relief are necessary to prevent ongoing civil rights violations.

## THIRD CAUSE OF ACTION
## STATE LAW CLAIMS

62.     The allegations set forth in paragraphs one through sixty-one inclusive, are incorporated herein as if fully set forth.

63.    The acts and conduct of all Defendants alleged in the above cause of action constitute assault and battery, intentional infliction of emotional distress, and interference with state constitutional rights, under the laws of the Commonwealth of Pennsylvania, and this Court has supplemental jurisdiction to hear and adjudicate those claims.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

    a.   Compensatory damages;

    b.   Punitive damages;

    c.   Reasonable attorney's fees and costs;

    d.   Injunctive Relief;

    e.   Declaratory Relief;

    f.   Such other and further relief as appears reasonable and just; and,

    g.   Plaintiff demands a jury trial as to each Defendant and as to each count.

THE CHOTINER FIRM


L. KENNETH CHOTINER, ESQUIRE
Counsel for Plaintiff
1818 Market Street, Suite 3100
Philadelphia, PA 19103
215.564.6544


MASTER WEINSTEIN SCHATZ MOYER, P.C.


STEVEN J. SCHATZ, ESQUIRE
Counsel for Plaintiff
1818 Market Street, Suite 3620
Philadelphia, PA 19103
215.561.2800

CERTIFICATE OF SERVICE

I, L. Kenneth Chotiner, Esquire, attorney for the Plaintiff, hereby certify that on this date the foregoing Amended Complaint, was served via regular mail, postage prepaid, and/or electronic filing to the following:

Amanda C. Shoffel, Esq.
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19107
Attorney for Defendants

FILED

NOV - 7 2013

MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

THE CHOTINER FIRM

Dated: November 6, 2013            s/ L. Kenneth Chotiner
                                    L. KENNETH CHOTINER, LL.M.
                                    Counsel for Plaintiff
                                    1818 Market Street, Suite 3740
                                    Philadelphia, PA 19103
                                    215.564.6544

EXHIBIT "A"



**PHILADELPHIA POLICE DEPARTMENT**

**MEMORANDUM (09-01)**                                            **(01-28-09)**

**SUBJECT:   OVERTIME MANAGEMENT**

---

**I.    POLICY**

    A.  Managing overtime costs are an essential element of supervisory and management responsibilities.  The underlying goal of these procedures is to use overtime only when necessary; not to impede legitimate policing and investigative work. The following measures for all personnel in the Philadelphia Police Department (PPD) shall be implemented immediately.  The purpose of these Department-wide procedures is to achieve uniformity in performance of our public service mission and to provide consistency in determining the need, use, distribution and management of overtime usage and in accordance with Directive 99 – "Overtime Pay and Compensatory Time" and Directive 13 – "Court Notices and Subpoenas."

---

**II.   PROCEDURES FOR NON-COURT OVERTIME**

    A.  Following the end of each pay period, the Administrative Service Bureau shall provide an overtime monitoring report to each unit detailing the use of overtime by type.  A department summary will be provided to the Police Commissioner.

    B.  The responsibilities set forth below outline general guidelines and procedures applicable to all police personnel receiving non-court overtime compensation, including but not limited to arrest, investigative and administrative overtime.  These guidelines and procedures do not pertain to overtime used for special events or federally-funded task forces, unless otherwise ordered.

    C.  Staffing should be planned so that most cases require only essential overtime.  When significant and recurring overtime is required, other alternatives should be considered such as redistribution of workload, postponement of the work, or the use of temporary help.  Overtime pay should not be used as a means to provide supplemental pay to an employee.

    D.  Personnel members on less than full-duty status are not normally eligible for non-court overtime compensation. Exceptions may be requested through the chain of command for approval by the Deputy Commissioner for Organizational Support Services.

- 1 -



E. Commanders/Managers shall be responsible for approving non-court overtime for employees within their respective unit, division or bureau. Approval may only be delegated in the manner listed below.

   1. The Commanding Officer/Manager may give discretion to Platoon Commanders to approve discretionary overtime for two (2) hours.

   2. The Commanding Officer must approve all overtime greater than two (2) hours and up to six (6) hours.

   3. The Divisional Commanders (Inspector) must approve all discretionary overtime greater than six (6) hours.

F. Commanders/Managers shall approve all overtime assignments prior to overtime being worked by police personnel. Advance authorization is required for overtime usage, unless exigent public safety and/or emergency conditions exist which necessitate approval after overtime usage has occurred.

G. The Request to Work Non-Court Overtime Form (75-57) shall be available to all employees within each unit, and be completed by the employee working overtime.

   1. Upon written approval (signature) by the respective Commanders, or designee as outlined above, for each unit, the Request to Work Non-Court Overtime Form (75-57) shall be attached to the Daily Attendance Record (DAR).

   2. Commanding Officers will collect, maintain and store all Overtime Authorization Forms in a manner consistent with the retention of the DARs as defined in Directive 115 – "Records Retention and Disposition Protocol."

H. Commanders/Managers shall be provided with a report at the end of each pay period for the purposes of monitoring and reviewing the use of overtime. Corrective action shall be taken as appropriate to ensure the appropriate use of overtime. This is an essential managerial task, and must be done in conjunction with the approval process for all employees within each respective unit.

---

## III. PROCEDURES FOR COURT OVERTIME

A. Commanders/Managers shall also be responsible for reviewing and monitoring all court overtime for all employees in their respective units.

   1. Platoon commanders will be required to review and initial all arrest and investigative reports, including PARS reports, to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed.

2. All reports should clearly articulate the facts and circumstances of each case. Platoon commanders are responsible for ensuring that reports comprehensively capture the exact actions relevant to that case for each personnel member listed, including the supervisor.

B. Supervisors shall ensure that they are directing an investigation appropriately and not placing themselves in a position that will require their testimony at a later date. A supervisor shall, upon receipt of any court notices requesting his/her presence, make this court notice known to his/her Commanding Officer.

C. Assigned investigative supervisors maintain the overall responsibility for case management, including the number of police personnel involved in each case. When feasible, the lead investigator, or co-investigator, will assume responsibility for handing multiple components of each case, including collecting physical evidence, writing property receipts, taking statements, and assuming the role of affiant on the search or arrest warrant. The narrative description included on all search or arrest warrants should match these assigned roles and responsibilities.

D. All court notices, especially Preliminary Hearings, will be reviewed by platoon supervisors to determine whether the subpoenaed member is necessary. Attention should also be paid to the number of personnel subpoenaed for a particular case as well as the number of consecutive days personnel are required to attend the same case.

      1. Whenever there appears to be unnecessary personnel requested on a case, the
*1            supervisor will contact the Overtime Management Unit (215-685-3674 or 75) to refer the case for their review.

      2. Whenever there are six (6) or more personnel subpoenaed on the same case, the supervisor will contact the Overtime Management Unit to refer the case for their review.

E. When police personnel are subpoenaed for court on a Scheduled Day Off (SDO), the platoon supervisor shall initiate an immediate review of the case and arrest paperwork to determine the need for the officer's appearance. If it appears that the officer is unnecessary, the supervisor shall contact the Overtime Management Unit to refer the case for their review.

---

## IV. COMPLIANCE

A. All personnel who receive overtime compensation shall participate in managing usage in a manner that is consistent with the procedures outlined in this memorandum. Accountability for overtime usage rests with every individual member of the Department.

B. This department-wide procedure sets the minimum requirements that all members must follow. Since the functions and responsibilities vary within each unit of the Philadelphia Police Department, bureaus may establish additional standard operating procedures (SOP). Such procedures shall not override the requirements stated here. All such SOPs shall be forwarded to the newly created Division of Standards and Accountability.

C. Unit commanders shall be responsible for the following:

   1. Approving overtime requests in accordance with the procedures outlined in this memorandum.

   2. Tracking the use of overtime by assigned personnel.

   3. Reviewing and monitoring all overtime usage for their respective unit on a monthly basis.

D. The Division of Standards and Accountability, under the Office of Operational Coordination and Accountability shall be charged with the following:

   1. Monitoring, analyzing and ensuring compliance with appropriate overtime usage protocols.

   2. Reviewing all unit-generated procedures on overtime management and providing corrective feedback to ensure compliance with this document.

   3. Identifying, analyzing and determining the appropriateness of individuals earning large amounts of overtime.

   4. Attend monthly COMPSTAT sessions for issues concerning overtime usage.

E. Overtime abuses or failures to comply with the above standard operating procedures shall be subject to disciplinary action.

---

**CHARLES H. RAMSEY**
**Commissioner**

---

| FOOTNOTE # | GENERAL # | DATE SENT | REVISION |
|---|---|---|---|
| *1 | 5671 (bt)  5672 (al) | 01-30-09 | Phone Number Change |

EXHIBIT "B"

# Philadelphia Police Department Investigation Report

| | |
|---|---|
| DC Number | 2009-06-047274 |
| Report No | 2009-06-047274.1 |
| Report Date | 9/5/2009 7:45:40 AM |
| Report Type | Investigation Report (75-49) |

## A - Approved
Page 1 of 3

---

### Unit Control#: 2009-6200-008595-0

| | | | |
|---|---|---|---|
| Classification | 0425 - AGGRAVATED ASSAULT ON POLICE OFF OTHER DANGEROUS WEAPON | Occurred On | 9/5/2009 6:10:00 AM |
| Previous Classification | 0425 - AGGRAVATED ASSAULT ON POLICE OFF OTHER DANGEROUS WEAPON | Reported On | 9/5/2009 6:22:08 AM |
| Location of Occurrence | 235 N 11th St | Disposition / Status | 2 - Arrest |
| Dist/Sect of Occurrence | 6th District Sector K | Clearing Unit | 0600 - 6th District |
| Responding Officer | P/O JOHN CRICHTON (PR 243710 / #2020) | Investigating Officer | Det THOMAS GALONSKY JR(PR 220275/ #9159) |
| Assisted By | | Dist/Unit Preparing | 6200 - Central Detective Division |
| Related Cases | | | |

### Report Approval

| | | | |
|---|---|---|---|
| Completed | 9/5/2009 7:45:40 AM | Det THOMAS GALONSKY JR (PR 220275 / #9159) | |
| Approved | 9/7/2009 6:10:43 AM | Sgt FRANCIS LOWRY (PR 196708 / #0270) | |

### Report Summary

n 09/05/09, P/O Crichton #2020 and P/O Graner #4726 (assigned to the 6th district plainclothes working 11pm x 7am tour of duty) were escorting the Defendant out of the 6th district. The Defendant was being released from police custody from a prior Disorderly Conduct arrest. As the Defendant left the 6th district building, he sat on top of a 6th district marked police car. P/O Crichton ordered the Defendant to get off of the police car, and to leave the area. The Defendant refused police orders, kicked over a stack of milk crates, and began swinging a milk crate at P/O Crichton's face. P/O Crichton dodged the Defendant swinging the milk crate, and took the Defendant down to the ground. The Defendant was apprehended to assault on police. Police transported the Defendant to Hahnemann Hospital for treatment for injuries to his arm that occurred during police take-down & arrest. No injuries to police.

DC #09-06-047274
CDD #09-8595
Assigned: Det. Galonsky #9159, CDD
Arresting: P/O Crichton #2020 and P/O Graner #4726, 6th district

### Classification Detail: 0425 - AGGRAVATED ASSAULT ON POLICE OFF OTHER DANGEROUS WEAPON

| | | | | | |
|---|---|---|---|---|---|
| Location | 053 - Highways (Outside Structure) | | | No. Prem. Entered | |
| Offense Completed? | YES | | Using | Entry Method | |
| Hate/Bias | None (No Bias) | | Criminal Activity | Type Security | |
| Domestic Violence | NO | | Weapons/Force | Other | Tools |

### Victim / Complainant V1:P/O JOHN  CRICHTON (PR 243710 / #2020)

| | | | | | |
|---|---|---|---|---|---|
| Address | | DOB | | Officer Payroll # | 243710 |
| CSZ | | Age / Race / Sex | 30 / White / Male | District / Unit | 0600 - 6th District |
| Home Phone | | Ethnicity | Not of Hispanic Origin | SSN | |
| Cell Phone | | Occupation/Grade | | OLN | |
| Beeper | | Employer/School | Philadelphia Police Department | OLN State / Country | / |
| Email | | Emp/Sch Address | One Franklin Sq | Injury | None |
| Work Phone | 215 686-1776 | Emp/Sch CSZ | Philadelphia, PA  19106 | Circumstances | Assault On Law Enforcement Officer(s) |
| Found Date | | Found Location | | Reason for Absence | |
| Reason for Cancellation | | Found City | | | |
| PCIC/NCIC Notification | | | | | |
| Victim Notes | | | | | |

### Interview Section

| | | | | |
|---|---|---|---|---|
| 9/5/2009 6:40:00 AM | | Interviewed By | Det THOMAS GALONSKY JR (PR 220275 / #9159) | 75-483 Completed   YES |
| Interview Location | 401 N 21st St | Others Present | | |
| Interview Summary | STATEMENT: | | | |

On 09/05/09, I was working 11pm x 7am tour of duty with partner P/O Graner #4726 (PR 263722).  At 6:10am, while we were at the 6th district in the parking lot, a prisoner (Brent Collison) was being released from 6th district custody.  He was arrested on Disorderly Conduct charges earlier in the night.  While Collison was exiting the 6th district, he started sitting on the front of a 6th district police car.  I instructed the male to get off of the police car and to leave the area.  Collison refused and picked up a milk crate, which was nearby, and began

## Philadelphia Police Department Investigation Report

| | |
|---|---|
| DC Number  2009-06-047274 | **A - Approved** |
| Report No   2009-06-047274.1 | Page 2 of 3 |
| Report Date  9/5/2009 7:45:40 AM | |
| Report Type  **Investigation Report (75-49)** | |

swinging it at my face. He also kicked over a stack of milk crates. He swung the milk crate at me two or three times before I took him down and handcuffed him. I arrested the male for assault.

Q. Were you working plainclothes?
A. Yes, and I had a badge displayed around my neck and was carrying a police radio at the time we were releasing Collison from custody.

Q. Were you injured?
A. No.

Q. Did you need the assistance of any other police to apprehend the offender for assault?
A. No.

Q. Were there any other police there who witnessed the assault?
A. P/O Graner.

Q. Were there any injuries to police?
A. No.

Q. Is there any type of crime scene at the 6th district?
A. No.

Q. Was any force used to apprehend the defendant?
A. Nothing other than me taking the male down to the ground.

Q. Does the defendant have any injuries?
A. Yes, he was transported to Hahnemann Hospital for complaints of pains to his left arm.

Q. Is there anything else that you can add?
A. No.

## Property

| Description | | Reported Value | Recovered Value |
|---|---|---|---|
| | TOTAL | $0 | $0 |

### Witness W2: P/O DAVID GRANER (PR 263722 / #4726)

| | | | | | |
|---|---|---|---|---|---|
| Address | | Age / Race / Sex | / / | Officer Payroll # | 263722 |
| CSZ | | Ethnicity | | District / Unit | 0600 - 6th District |
| Home Phone | | Occupation/Grade | | SSN | |
| Cell Phone | | Employer/School | Philadelphia Police | OLN | |
| Beeper | | | Department | OLN State / Country | / |
| Email | | Emp/Sch Address | One Franklin Sq. | | |
| Work Phone | 215 686-1776 | Emp/Sch CSZ | Philadelphia, PA  19106 | | |
| Witness Notes | | | | | |

**Interview Section**

| | | | |
|---|---|---|---|
| Interview Date | | Interviewed By | (PR / #) | 75-483 Completed |
| Interview Location | | Others Present | |
| Interview Summary | | | |

### Arrestee A1: Collison, Brent

| | | | | | |
|---|---|---|---|---|---|
| AKA | | DOB | 5/5/1978 | SSN | |
| Alert(s) | | Age / Race / Sex | 31 / White / Male | OLN | |
| Address | 12135 Academy Rd | Ethnicity | Not of Hispanic Origin | OLN State / Country | / United States of America |
| CSZ | Philadelphia, PA  19154 | Place of Birth | | | |
| Home Phone | | Occupation/Grade | | Build | |
| Cell Phone | | Employer/School | | Scars/Marks/Tattoos | |
| Beeper | | Emp/Sch Address | | Teeth | |
| Email | | Emp/Sch CSZ | | Facial Hair | |
| Work Phone | | Height / Weight | / | Complexion | |

## Philadelphia Police Department Investigation Report

| | |
|---|---|
| DC Number **2009-06-047274** | **A - Approved** |
| Report No **2009-06-047274.1** | Page 3 of 3 |
| Report Date **9/5/2009 7:45:40 AM** | |
| Report Type **Investigation Report (75-49)** | |

| | | | | | |
|---|---|---|---|---|---|
| Attire | | Eye / Hair Color | / | Hair Style / Length | / |
| Jewelry | | Artif Body Prts/Aids | | Blood Type | |
| Offender PID | | CBN | | Arrested Date | 9/5/2009 6:10:00 AM |
| Arrest Type | **Sight Arrest** | Arrested For | 0425 – AGGRAVATED ASSAULT ON POLICE OFF OTHER DANGEROUS WEAPON | Arrest Location | 235 N 11th St |
| FBI No. | | Arresting Officer 1 | W2 | Booked On | |
| PA SID. | | Arresting Officer 2 | | Booked Location | |
| Armed With | **01 - Unarmed** | Number of Warrants | | Released Location | |
| Multi. Clearance | **Not Applicable** | Notified | | Released On | |
| Prev. Suspect No. | | Juvenile Disposition | | Released By | **(PR / #)** |
| | | | | Release Reason | |
| | | | | Held For | |

Arrest Notes

### Interview Section

| | | | | | |
|---|---|---|---|---|---|
| Interview Date | | Interviewed By | **(PR / #)** | 75-483 Completed | |
| Interview Location | | Guardian Present | | Miranda Read | |
| | | Others Present | | Miranda Waived | |

rview Summary

## Case Facts

## MO

## Actions Taken

| | | | |
|---|---|---|---|
| 1. PA Crimes Code Charges Placed for Defendant | Yes | | 9/5/2010 |
| 2. Checked defendant for gun permit | Yes | | 9/5/2010 |
| 3. BMV Records Check | Yes | | 9/5/2010 |
| 4. Criminal History Through Federal, State and Local ems Records Check | Yes | | 9/5/2010 |
| 5. Defendant Checked Through PA State Police for Number of Guns Owned | Yes | | 9/5/2010 |
| 6. NCIC/PCIC Offender Records Check | Yes | | 9/5/2010 |
| 7. QRO8  Records Check | Yes | | 9/5/2010 |
| 8. Voter Registration Records Check | Yes | | 9/5/2010 |
| 9. Victim Interview(s) Conducted | Yes | | 9/5/2010 |

EXHIBIT "C"

# PHILADELPHIA POLICE DEPARTMENT USE OF FORCE REPORT

| District Control Number | Date of Incident | Time of Incident | Day of Week |
|---|---|---|---|
| 09.06.047274 | 09.05.09 | 610 A.M. | Sunday |

**Origin of Incident:** ☐ Radio Call  ☒ Sight  ☐ Person  ☐ Other

**Place of Occurrence (Exact Address if Known)** 235 N. 17th St.

**Nature of Assign/Contact** Release from Cust.

**Type of Premises:** Outside: ☒  Indoors: ☐  
**Lighting:** ☒ Day  ☐ Dusk  ☐ Night  
**Lighting:** ☐ Good  ☐ Poor  ☐ Unlighted

**Weather Conditions:** ☒ Clear  ☐ Rain  ☐ Fog  ☐ Cloudy  ☐ Snow  ☐ Windy  ☐ Other (Specify)

| Involved Police Officer | Last Name: Graner | First Name: David | MI: b |
|---|---|---|---|

| Rank: P/o | Payroll #: 263722 | Badge #: 4726 | Race: W | Sex: ☒ Male  ☐ Female | Age: 34 |
|---|---|---|---|---|---|

| Height: 5'10 | Weight: 195 | Dist/Unit of Assignment: 6BD3 | Work Assignment: 6BD3 |
|---|---|---|---|

**Tour of Duty:** ☐ 8x4  ☐ 4x12  ☒ 12x8  ☐ Other:  ☒ Regular Shift  ☐ OT Shift  ☐ Off Duty

**Attire:** ☐ Uniform  ☒ Civilian Clothes  **At Time of Incident:** ☐ Solo  ☒ 2 Person  ☐ More than 2 persons

## Type of Force Used by Police (Check Appropriate Blocks)

☐ Baton  ☐ OC Spray  ☐ Taser  
☐ Vehicle  ☐ Canine  ☐ Blunt Object  
☒ Other Weapon/Type of Force: Forced to ground

**Number of Times Forced Used by Police This Incident:** 1 once

| | | ☐ None | ☐ Mild | ☐ Moderate | ☐ Substantial | ☐ Incapacitated |
|---|---|---|---|---|---|---|
| Baton | (effect on subject) | ☐ None | ☐ Mild | ☐ Moderate | ☐ Substantial | ☐ Incapacitated |
| Taser | (effect on subject) | ☐ None | ☐ Mild | ☐ Moderate | ☐ Substantial | ☐ Incapacitated |
| OC Spray | (effect on subject) | ☐ None | ☐ Mild | ☐ Moderate | ☐ Substantial | ☐ Incapacitated |

**Officer Contamination:** ☐ Yes  ☒ No  **Back-up Officer** ☐ Yes  ☒ No

**Was OC Spray/Taser Effective in Overcoming Force/Threat?** ☐ Yes  ☐ No  **If No, explain police action:**
NONE USED

**Was OC Spray Used on a Dog?** ☐ Yes  ☒ No  **Other Animal?** ☐ Yes  ☒ No

**Did Animal Attack or Did It Threaten to Attack?** ☐ Attacked  ☐ Threatened

## Force or Threat of Force Against Police Officer

☒ Active Resistance  ☐ Kicks/Punches  ☐ Blunt Instrument  ☐ Firearm  ☐ Knife  
Other: Swinging a milk crate at P/o face

**Police Hospitalized:** ☐ Yes  ☒ No  ☐ Hospital Admission  **Or Treated for injury:** ☐ Yes  ☒ No  **Photo of Injuries:** ☐ Yes  ☒ No

**Name Of Hospital:**  **Physician:**

**Description of Injury/Medical Treatment:** No medical Treatment needed

## Other Police Witnesses

| Badge | PR# | Last Name | First Name | Dist/Unit of Assignment |
|---|---|---|---|---|
| 2020 | ███████ | Crichton | John | 6BD3 |

**DO NOT USE THIS FORM FOR THE DISCHARGE OF A FIREARM** (Please print except in signature blocks)
**COMPLETE ADDITIONAL FORMS FOR ALL SUBJECTS AND POLICE PERSONNEL**



27

## Subject Information

Last Name: Collison    First Name: Brent    MI:

Address: 12135 Academy Rd.    City: Phila    State: Pa    Zip: 19154    PH#:

Race: W    Age: 32    Sex: ☒ Male ☐ Female    Height: 5'9    Weight: 175    Arrest Number: 57

Primary Charge: Assault on Pol.    All Secondary Charge(s): REAP, PIC,    ☐ 302

**Subjects Behavior/Condition at Confrontation** (circle one or more below)
Calm/Passive    (Intoxicated)    Drugged    Mentally Ill    (Hostile)    Other:

**Injury to Subject** (circle one or more below):                    Burn    OC Contamination
None    Taser Shock    Concussion    Dislocation    Lacerations    Nerve Damage    Dog Bite    Puncture Wound
(Abrasion)    Bruise    Fracture    Human Bite    Paralysis    Unconscious    Sprain/twist    Soft Tissue Damage
Other:                    Complaint of Pain: To left arm

**Body Parts Injured or Effected** (circle one or more below)    Eyes
| Abdomen | Back | Elbow | Fingers | Hands | Internal | Neck | Injuries |
| Ankle | Buttocks | Face | Genitals | Head | Knees | Shoulder | |
| (Arm) | Chest | Feet | Groin | Hip | Legs | Wrist | ☒ Yes  ☐ No |

Medical Treatment:    ☐ Yes    ☐ No    ☐ Refused

Hospital: Hahneman    Physician: Dr. Hamilton    Admitted: ☐ Yes  ☒ No

Was Subject Wearing Contact Lenses (OC Cases):  ☐ Yes ☒ No   Were Lenses Removed: ☐ Yes ☒ No ☐ N/A

Description of Injury/Medical Treatment: Compl. of Pain to left arm treated and released

## Civilian Witnesses

Last Name:    First Name:    MI:
Address:    City:    Zip:
Home Phone:    Work Phone:

Last Name:    First Name:    MI:
Address:    City:    Zip:
Home Phone:    Work Phone:

**Summary of Incident:** Police were releasing male from custody when def. began to become unruly. Male was using loud profanity. Def. then sat on hood of RPC. Police advised male to leave district prop to which he refused. Def. then pl'd a milk crate and began swinging it at police violently. Police grabbed male and took him to the ground. Male was placed in handcuffs. Male began compl. of pain to left arm. Transp. to Hahneman hosp. by 603 treated and released by Dr. Hamilton.

Police Officer's Signature: P/o David Graner
(Printed) Last Name: Graner    First Name: David    MI:    Badge: 4726    Payroll:

Supervisor's Signature: Sgt Burton
(Printed) Last Name: Burton    First Name: Anthony    MI:    Badge: 526    Payroll:

Platoon Commander's Signature: 4/m #270
(Printed) Last Name: Gross    First Name: mushael    MI:    Badge: 270    Payroll:

Commanding Officer's Signature: Brij Born
(Printed) Last Name: Born    First Name: Brian    MI: J    Badge: 50    Payroll:

## Internal Affairs Notification

Date:    Time:    General #:

78

EXHIBIT "D"

# PHILADELPHIA POLICE DEPARTMENT USE OF FORCE REPORT

| District Control Number | Date of Incident | Time of Incident | Day of Week |
|---|---|---|---|
| 090604 7274 | 09.05.09 | 6:10 AM | SUNDAY |

**Origin of Incident:** ☐ Radio Call  ☒ Sight  ☐ Person  ☐ Other

**Place of Occurrence (Exact Address if Known):** 235 N. 11TH ST.

**Nature of Assign/Contact:** RELEASE FROM CUST.

**Type of Premises:** Outside: ☒  Indoors: ☐   Lighting: ☒ Day  ☐ Dusk  ☐ Night   Lighting: ☐ Good  ☐ Poor  ☐ Unlighted

**Weather Conditions:** ☒ Clear  ☐ Rain  ☐ Fog  ☐ Cloudy  ☐ Snow  ☐ Windy  ☐ Other (Specify)

**Involved Police Officer:** Last Name: CRICHTON   First Name: JOHN   MI:

| Rank: P/O | Payroll #: 243710 | Badge #: 2020 | Race: W | Sex: ☒ Male ☐ Female | Age: 30 |
|---|---|---|---|---|---|

| Height: 6'5 | Weight: 250 | Dist/Unit of Assignment: 6BD3 | Work Assignment: 6BD3 |
|---|---|---|---|

**Tour of Duty:** ☐ 8x4  ☐ 4x12  ☒ 12x8  ☐ Other:     ☒ Regular Shift  ☐ OT Shift  ☐ Off Duty

**Attire:** ☐ Uniform  ☒ Civilian Clothes   **At Time of Incident:** ☐ Solo  ☒ 2 Person  ☐ More than 2 persons

## Type of Force Used by Police (Check Appropriate Blocks)

☐ Baton  ☐ OC Spray  ☐ Taser
☐ Vehicle  ☐ Canine  ☐ Blunt Object
☒ Other Weapon/Type of Force: - take down

**Number of Times Forced Used by Police This Incident:** 1 ONCE

| | | None | Mild | Moderate | Substantial | Incapacitated |
|---|---|---|---|---|---|---|
| Baton | (effect on subject) | ☐ | ☐ | ☐ | ☐ | ☐ |
| Taser | (effect on subject) | ☐ | ☐ | ☐ | ☐ | ☐ |
| OC Spray | (effect on subject) | ☐ | ☐ | ☐ | ☐ | ☐ |

**Officer Contamination:** ☐ Yes  ☒ No   **Back-up Officer:** ☐ Yes  ☒ No

**Was OC Spray/Taser Effective in Overcoming Force/Threat?** ☐ Yes  ☐ No   If No, explain police action:
NONE USED

**Was OC Spray Used on a Dog?** ☐ Yes  ☒ No   **Other Animal?** ☐ Yes  ☒ No

**Did Animal Attack or Did it Threaten to Attack?** ☐ Attacked  ☐ Threatened

## Force or Threat of Force Against Police Officer

☒ Active Resistance  ☐ Kicks/Punches  ☐ Blunt Instrument  ☐ Firearm  ☐ Knife
☒ Other: SWINGING MILK CRATE AT P/O FACE

**Police Hospitalized:** ☐ Yes ☒ No  ☐ Hospital Admission   **Or Treated for Injury:** ☐ Yes ☒ No   **Photo of Injuries:** ☐ Yes ☒ No

**Name Of Hospital:**    **Physician:**

**Description of Injury/Medical Treatment:** NO MEDICAL TREATMENT NEEDED

## Other Police Witnesses

| Badge | PR# | Last Name | First Name | Dist/Unit of Assignment |
|---|---|---|---|---|
| 4726 | ███████ | GRANER | DAVID | 6BD3 |

**DO NOT USE THIS FORM FOR THE DISCHARGE OF A FIREARM** (Please print except in signature blocks)
**COMPLETE ADDITIONAL FORMS FOR ALL SUBJECTS AND POLICE PERSONNEL**



29

## Subject Information

Last Name: COLLISON   First Name: BRENT   MI:

Address: 12135 ACADEMY RD   City: PHILA   State: PA   Zip: 19158   PH#:

Race: W   Age: 32   Sex: ☒ Male ☐ Female   Height: 5'9   Weight: 175   Arrest Number: 6/   ☐ 302

Primary Charge: ASSAULT ON POL   All Secondary Charge(s): REAP, PIC

**Subjects Behavior/Condition at Confrontation (circle one or more below)**
Calm/Passive   (Intoxicated)   Drugged   Mentally Ill   (Hostile)   Other:

**Injury to Subject (circle one or more below):**          Burn          OC Contamination

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| None | Taser Shock | Concussion | Dislocation | Lacerations | Nerve Damage | Dog Bite | Puncture Wound |
| (Abrasion) | Bruise | Fracture | Human Bite | Paralysis | Unconscious | Sprain/twist | Soft Tissue Damage |

Other:          Complaint of Pain: TO LEFT ARM

**Body Parts Injured or Effected (circle one or more below)**          Eyes

| | | | | | | | Injuries |
|---|---|---|---|---|---|---|---|
| Abdomen | Back | Elbow | Fingers | Hands | Internal | Neck | |
| Ankle | Buttocks | Face | Genitals | Head | Knees | Shoulder | ☒ Yes ☐ No |
| (Arm) | Chest | Feet | Groin | Hip | Legs | Wrist | |

Medical Treatment: ☒ Yes   ☐ No   ☐ Refused

Hospital: HAHNEMANN   Physician: DR HAMILTON   Admitted: ☐ Yes ☒ No

Was Subject Wearing Contact Lenses (OC Cases): ☐ Yes ☒ No   Were Lenses Removed: ☐ Yes ☒ No ☐ N/A

Description of Injury/Medical Treatment: COMPL OF PAIN TO LEFT ARM TREATED AND RELEASED

## Civilian Witnesses

| | | |
|---|---|---|
| Last Name: | First Name: | MI: |
| Address: | City: | Zip: |
| Home Phone: | Work Phone: | |
| Last Name: | First Name: | MI: |
| Address: | City: | Zip: |
| Home Phone: | Work Phone: | |

Summary of Incident: POLICE WERE RELEASING MALE FROM CUSTODY WHICH [illegible] MALE WAS USING LOUD PROFANITY. DEF [illegible] WAS ON [illegible] POLICE ADVISED MALE TO LEAVE DISTRICT PROP TO WHICH HE REFUSED. DEF THEN P/U A MILK CRATE AND BEGAN SWINGING IT AT POLICE [illegible] POLICE GRABBED MALE AND TOOK HIM TO THE GROUND. MALE WAS PLACED IN HANDCUFFS. MALE BEGAN COMPL OF PAIN TO LEFT ARM. TAKEN TO HAHNEMAN BY 603 TREATED AND RELEASED [illegible]

Police Officer's Signature: P/O [signature]

(Printed) Last Name: CRUMTON   First Name: JOHN   MI:   Badge: 2020   Payroll: [redacted]

Supervisor's Signature: Sgt [signature]   Date Reviewed:

(Printed) Last Name: BURTON   First Name: Anthony   MI:   Badge: 526   Payroll: [redacted]

Platoon Commander's Signature: [signature] 270   Date Reviewed:

(Printed) Last Name: Michael   First Name: Cross   MI:   Badge: 220   Payroll: [redacted]

Commanding Officer's Signature: [signature]   Date Reviewed: 8/4/10

(Printed) Last Name: Korn   First Name: Brian   MI: J   Badge: 50   Payroll: [redacted]

## Internal Affairs Notification

Date:          Time:          General #:

30

EXHIBIT "E"

