IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRENT COLLINSON,
          Plaintiff,

v.

CITY OF PHILADELPHIA et al.,
          Defendants.

CIVIL ACTION
NO. 12-6114

FILED
JAN 14 2015
MICHAEL E. KUNZ, Clerk
L_____ Dep. Clerk

**Jones, II     J.**                                                       **January 14, 2015**

### Memorandum

Brent Collinson ("Plaintiff") has sued Philadelphia Police Commissioner Charles H. Ramsey ("Cmmr. Ramsey") in his individual and official capacities under Counts I and II of his Amended Complaint. Count I of Plaintiff's Amended Complaint alleges police officers used excessive force against him and that the City of Philadelphia has unconstitutional policies and practices of failing to train, supervise, and discipline police officers. Count II of Plaintiff's Amended Complaint alleges that a Philadelphia Police Department policy improperly withholds exculpatory evidence from police reports, thereby infringing on Plaintiff's due process rights. Count III alleges state law causes of action that are not relevant to the present Motion.

Defendants moved to dismiss all claims against Cmmr. Ramsey in his individual and official capacities. Defendants argued that the claims regarding Cmmr. Ramsey in his individual capacity under Count I should be dismissed because "he has no personal involvement in the excessive force claim." (Defs. Mot. to Dismiss, Dkt No. 19 [hereinafter MTD] at 5.) In their Motion to Dismiss, Defendants treat Plaintiff's Count II as though it alleges liability against Commissioner Ramsey only in his official capacity, and not in his individual capacity. (MTD at 8.) Plaintiff argues in his Response to the Motion to Dismiss that Count II is against Cmmr.

1

Ramsey in his personal capacity, in addition to his official capacity. (Resp. to Mot. to Dismiss [hereinafter Resp.] at 22.) Finally, Defendants argue that claims against Cmmr. Ramsey in his official capacity should be dismissed under both Counts I and II because "his name is simply a substitute for the City of Philadelphia." (MTD at 5.)

The Court GRANTS IN PART AND DENIES IN PART Defendants' Motion. The Court DISMISSES WITH PREJUDICE all claims against Cmmr. Ramsey in his official capacity and the claim against Cmmr. Ramsey in his personal capacity under Count I. The Court DISMISSES WITHOUT PREJUDICE the claim against Cmmr. Ramsey in his personal capacity under Count II and GRANTS Plaintiff leave to amend the Amended Complaint within thirty (30) days of the corresponding Order.

## I. Standard of Review

A party may move for judgment "after the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). In so doing, "the moving party must show that no issues of material fact exist and that judgment should be entered in its favor as a matter of law." *S.B. v. United of Omaha Life Ins. Co.,* Civ. No. 13–1463, 2013 WL 2915973, at *3 (E.D. Pa. 2013) (citing *Bayer Chemicals Corp. v. Albermarle Corp.,* 171 Fed. App'x 392, 397 (3d Cir.2006); *Jablonski v. Pan Amer. World Airways, Inc.,* 863 F.2d 289, 290 (3d Cir.1988)). "In evaluating a Rule 12(c) motion, a court must view the pleadings in the light most favorable to, and draw all inferences in favor of, the nonmoving party." *Jablonski,* 863 F.2d at 290. The court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.*

## II. Background

In this consolidated case, Plaintiff Brent Collinson alleges Defendants violated his civil rights through Philadelphia police officers' use of excessive force on Plaintiff and by the Philadelphia Police Department's implementation of a policy that causes a systemic failure to

train, supervise, and/or discipline police officers regarding officers' use of force. Plaintiff further claims that this policy violates his federal civil rights and that it interferes with his ability to pursue his section 1983 claims. Plaintiff also brings state law claims.

### a. Parties

Plaintiff is a resident and citizen of Pennsylvania. (Amended Complaint, Dkt No. 12 [hereinafter AC] ¶ 6.) Defendant City of Philadelphia ("the City") oversees the Philadelphia Police Department and was the employer of all officer Defendants in this case. (AC ¶ 7.) Defendant Philadelphia Police Commission Charles H. Ramsey ("Cmmr. Ramsey") was at all relevant times the Commissioner of the Police Department of the City. (AC ¶ 8.) Cmmr. Ramsey is being sued in his personal and official capacities. Plaintiff has also sued ten named Philadelphia police officers. (AC ¶¶ 9-18.)

### b. Policy

Plaintiff's claims concern a 2009 Philadelphia Police Department Overtime Management Memorandum (09-01) dated January 28, 2009 ("the Policy") which states the following: "Platoon commanders will be required to review and initial all arrest and investigative reports, including [Preliminary Arraignment Reporting System] reports, to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed." (AC ¶ 1, Ex. A.)

### c. Underlying Incident

For the purpose of deciding the instant Motion, the Court must take all alleged facts as true. *Phillips,* 515 F.3d at 233. On or about September 5, 2009, in the early morning, Plaintiff was released from custody from a Philadelphia Police Department police facility in the 6th Police District. (AC ¶ 23.) When Plaintiff went outside the 6th District station, Defendant P.O. John Crichton went outside as well, punched Plaintiff in the face, and slammed Plaintiff to the ground

causing Plaintiff's elbow to fracture and dislocate, among other injuries. (AC ¶¶ 24-25.) Plaintiff told P.O. Crichton he was hurt. (AC ¶ 26.) P.O. Crichton went into the 6th District building. (AC ¶ 26.) Plaintiff called "911," (AC ¶ 27), and Police dispatch radioed for a unit to go to Plaintiff's location. (AC ¶ 29.) Defendants P.O. Kenneth Taylor, Jr. and P.O. Shawneir Collier responded to the call at 6:06am. (AC ¶ 30.) At 6:22am, Defendant P.O. Salvatore Maiorano, called police dispatch and reported an "assault on police." (AC ¶ 31.) At 6:25am, Defendant Lt. Michael Gross called dispatch to make changes to the 6:06 am radio call. (AC ¶ 32.)

On the police investigation report, only two police witnesses, P.O. Crichton and Defendant P.O. David Graner, are listed. (AC ¶ 33.) The Use of Force report similarly only lists these two officers. (AC ¶ 34.) Despite their omission from the reports, three additional police witnesses were present during the incident. First, Defendant Lt. Gross testified that he had witnessed the incident. (AC ¶ 36.) Second, Defendant P.O. Taylor testified that he witnessed part of the incident. (AC ¶ 38.) Third, Defendant P.O. Collier also testified that he witnessed part of the incident. (AC ¶ 38.) Defendant Lt. Gross stated that he was not listed as a police witness in the paperwork because of the Policy. (AC ¶ 37.)

Plaintiff suffered injuries including but not limited to injuries to his left arm, left elbow, face and leg. (AC ¶ 42.) Plaintiff has had to undergo two surgeries to his left elbow as a result of the incident. (AC ¶ 42.) Plaintiff suffered from serious mental anguish as a result of the incident. (AC ¶ 42.) Plaintiff further alleges that he has suffered actual loss of gross income, impairment of earning capacity, other financial expenses, and various physical and mental impairments. (AC ¶¶ 45-50.)

### d. Plaintiff's Arguments

Plaintiff alleges that the Policy requires police officers to fail to identify police witnesses who possess exculpatory information because such witnesses would not ensure a "successful

4

outcome" for the case. (AC ¶ 1.) Plaintiff's allegation goes, if an officer has exculpatory information based on what he or she witnessed, under the Policy, said officer should not be included on the report because his or her testimony would hinder a potential "successful outcome," aka a conviction. (AC ¶ 1.) Further, when a police officer is subpoenaed to appear at Court on a Scheduled Day Off, the officer's platoon supervisor is required to review the case paperwork to determine if the officer's appearance is "unnecessary." (AC ¶ 1.) Given that a hypothetical police witness with exculpatory information may not appear on the relevant paperwork, the supervisor may determine that such officer is "unnecessary" to the case. (AC ¶ 1.)

Further, Plaintiff argues, this policy results in a failure to supervise or discipline police officers for the use of excessive force. (AC ¶ 2.) The Police Department Internal Affairs Bureau ("IAB") reviews an officer's use of force. (AC ¶ 2.) When an officer is required to use some type of force, the officer is required to send the "IAB" a Use of Force Report with the police paperwork. (AC ¶ 2.) Plaintiff argues that "[b]y mandating that only officers that are 'necessary' to ensure a conviction are listed on the police paperwork, the IAB Captain's review is skewed." (AC ¶ 2.) Thus, Plaintiff argues, the policy encourages police officers to work in concert to "withhold material information from the IAB and Citizens." (AC ¶ 3.)

Finally, Plaintiff concludes, without this policy, Defendants in this case would not have used excessive force and Plaintiff would not have been injured. (AC ¶ 4.) Further, because of this Policy, Plaintiff's due process rights in this lawsuit were hindered. (AC ¶¶ 57-61.)

In summary, Plaintiff alleges that "[t]he practical effect of the Policy is that the police manipulate the system in an attempt to 'ensure…the successful outcome of a case.' Those citizens accused of crimes may never learn the existence of, let alone, the identity of police

5

witnesses who can help their defense. Moreover, if such witnesses are identified, they may never appear in court because a platoon commander…determined that their testimony was not necessary to ensure a conviction." (AC ¶ 1.)

### III. Discussion
#### A. Police Commissioner Ramsey in his Individual Capacity
##### a. Standard of Review

In a civil rights case brought pursuant to 42 U.S.C. § 1983, Plaintiff must show that the Defendant, acting under the color of state law, deprived him of "rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535 (1981). An individual state actor is liable under section 1983 only where he or she played an "affirmative part" in the alleged misconduct. *Mason v. City of Philadelphia*, 2014 WL 4722640, at *5 (E.D. Pa. 2014) (citing *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (internal citations omitted)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt,* 451 U.S. at 537 n. 3).

Plaintiff can allege that Cmmr. Ramsey is liable in two ways. First, personal involvement can be shown through allegations of "personal direction of or actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207-08. A showing of actual knowledge must be made with "appropriate particularity." *Id.*

Second, Plaintiff can also show supervisory liability by pleading that Defendants were policymakers who acted "with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm." *A.M. v.*

6

*Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 725 (3d Cir. 1989)).[1]

### b. Count I

First, Plaintiff has clearly failed to allege that Cmmr. Ramsey was personally involved in Count I's excessive force actions. Plaintiff conceded as much in his Response to the Motion to Dismiss, stating, "As to the issue of excess force, plaintiff believes at this time that Police Commissioner Ramsey had no personal involvement in the actual force or confrontation with Plaintiff." (Resp. at 9.)

Second, Plaintiff does not allege that Cmmr. Ramsey, due to his role as a supervisor was "deliberately indifferent" or that he failed to train, supervise, etc. Instead, the remainder of this Count focuses squarely on the "City of Philadelphia" and not on the named officers, including Cmmr. Ramsey. (AC ¶¶ 51-56.)

Under either theory of liability, Plaintiff has failed to sufficiently plead that Cmmr. Ramsey can be held personally liable under Count I.

### c. Count II

In Count II, Plaintiff alleges that Cmmr. Ramsey and other Defendants adopted the Policy, that pursuant to the Policy, Defendants withheld exculpatory evidence from police

---

[1] The Third Circuit has expressed uncertainty as to the viability and scope of supervisory liability after the Supreme Court's holding in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *DiaLauri v. Mullen*, 563 Fed.Appx. 128, 131 n. 1 (3d Cir. 2014); *Argueta v. U.S. Immigr. & Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n. 8 (3d Cir. 2010). The Third Circuit recently addressed the concept of supervisory liability after *Iqbal* as it pertained specifically to Eighth Amendment claims. The Circuit held that "under *Iqbal*, the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 319 (3d Cir. 2014). The Third Circuit specifically "left for another day" whether supervisory liability will continue to exist for other constitutional violations. *Id.*

With this "uncertainty," district courts in this Circuit have continued to apply pre-*Iqbal* standards with caution. *See, e.g., Pratt v. City of Philadelphia*, 2012 WL 592247, at *3 (E.D. Pa. 2012).

7

reports, and that this withholding of exculpatory evidence is a continuing violation of Plaintiff's constitutional rights. (AC ¶¶ 57-61.)

The Court will first address those claims in the Amended Complaint that are alleged facts, rather than legal arguments. There are three facts relevant to this claim against Cmmr. Ramsey alleged in the Amended Complaint. First, Cmmr. Ramsey was the Commissioner of the Philadelphia Police Department in January 2009 when the Department adopted the Policy. (AC ¶¶ 1, 22.) By reference to all "defendants," Plaintiff alleges that Cmmr. Ramsey "adopt[ed]" this Policy. (AC ¶ 58.) Second, the Policy states that "Platoon commanders will be required to review and initial all arrest and investigative reports, including [Preliminary Arraignment Reporting System] reports, to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed." (AC ¶ 1, Ex. A.) Third, Defendant Lt. Gross stated that he was not listed on the police paperwork related to the underlying incident because of the Policy. (AC ¶ 37.) The failure to list Lt. Gross, among others, on the paperwork is the injury that Plaintiff is claiming in Count II.

Plaintiff has clearly failed to allege sufficient facts under the first theory of liability. Plaintiff did not plead that Cmmr. Ramsey was actually aware or personally involved in the decision to leave Lt. Gross off of the police report. Plaintiff did not allege that Cmmr. Ramsey had notice of any actions of his subordinates related to the Policy. Plaintiff has not met his burden of alleging actual knowledge with appropriate particularity. *Rode*, 845, F.2d at 1207-08.

Instead, Plaintiff seeks to argue that that the second theory of liability applies and that Cmmr. Ramsey acted with "deliberate indifference to the consequences, established and maintained a policy…which directly caused the constitutional harm." *A.M.*, 372 F.3d at 586. The Amended Complaint does allege that "by…being deliberately indifferent to a pattern, practice

and policy pursuant to which defendants unlawfully and improperly withhold exculpatory evidence from police reports," all Defendants, including Cmmr. Ramsey, have deprived Plaintiff of his rights. (AC ¶ 58.) However, this is merely a conclusory statement. There are no facts alleged which tend to show deliberate indifference. The allegation that subordinates relied on the Policy to engage in allegedly unconstitutional behavior does not implicate their supervisor simply due to the fact that said person is their supervisor. *Respondeat superior* is not a basis of liability.

Because amendment may correct these deficiencies, Plaintiff is granted thirty (30) days from the date of the corresponding Order to amend his Amended Compliant.

### B. The claims against Commissioner Ramsey in his official capacity shall be dismissed.

In Plaintiff's Response to Defendants' Motion, Plaintiff wrote: "Plaintiff concedes that a suit cannot be maintained against Police Commissioner Ramsey in his official capacity while acting in such said official capacity on behalf of the City of Philadelphia." (Dkt No. 21, Pl. Resp. to MTD [hereinafter Resp.] at 9 n. 5.) Defendants, Plaintiff and the Court all agree.

A suit against Commissioner Ramsey in his official capacity is the self-same as a suit against the City of Philadelphia. "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell* [*v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55 (1978)], local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165-66 (quoting *Monell,* 436 U.S. at 690, n. 55); *see also Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122, 130 (3d Cir. 1985).

Thus, this claim against Commissioner Ramsey in his official capacity fails as a matter of law. *Accord Munson v. City of Philadelphia*, 2009 WL 2152280, at *4 (E.D. Pa. 2009).

BY THE COURT:

_____
C. Darnell Jones II   J.