IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRENT COLLINSON,<br>                Plaintiff,<br><br>    v.<br><br>CITY OF PHILADELPHIA et al.,<br>                Defendants. | CIVIL ACTION<br>NO. 12-6114 |

**Jones, II    J.**                                                                                                            June 9, 2015
**Memorandum**

      Brent Collinson ("Plaintiff") sued the City of Philadelphia ("the City"), Lieutenant Michael Gross ("Lt. Gross"), Police Officer David Graner ("P.O. Graner"), Police Officer Salvatore Maiorano ("P.O. Maiorano"), Corporal Young ("Cpl. Young"), Police Officer McGrath ("Sgt. McGrath"), Police Officer Juan Ramirez ("P.O. Ramirez"), Police Officer Shawnier Collier ("P.O. Collier"), Police Officer Kenneth Taylor, Jr. ("P.O. Taylor"), Police Sergeant Anthony Burton ("Sgt. Burton"), Police Officer John Crichton ("P.O. Crichton"). (Dkt No. 12 [hereinafter AC].)

      Defendants moved for summary judgment on all claims against the City of Philadelphia and on all section 1983 claims against Lt. Gross, Sgt. McGrath, Sgt. Burton, Cpl. Young, P.O. Graner, P.O. Maiorano, P.O. Taylor, and P.O. Collier. (Dkt No. 39 [hereinafter MSJ].) Upon consideration of Defendants' Motion for Partial Summary Judgment, and Plaintiff's Response, (Dkt No. 40), the Court orders said Motion granted in part and denied in part as described herein.

      **I.    Standard of Review**

      Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning they concern facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such

that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. A dispute is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that issue. *Anderson*, 477 U.S. at 248. In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Seigel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## II. Background

In this consolidated case, Plaintiff alleges Defendants violated his civil rights through Philadelphia police officers' use of excessive force on Plaintiff and by the Philadelphia Police Department's implementation of a policy that leads to excessive force and causes a systemic failure to train, supervise, and/or discipline police officers regarding officers' use of force. Plaintiff further claims that this policy violates his federal civil rights in that it interferes with his ability to pursue both his defense in his criminal case and his section 1983 claims. Plaintiff also brings state law claims. The Court draws all reasonable inferences in favor of Plaintiff. The Court further notes where salient facts remain disputed.

### a. Parties

Plaintiff is a resident and citizen of Pennsylvania. (AC ¶ 6.) Defendant City of Philadelphia ("the City") oversees the Philadelphia Police Department and was the employer of all officer Defendants in this case. (AC ¶ 7.) Named Police Defendants were all working for the Philadelphia Police Department during the relevant time period. (AC ¶¶ 9-18.)

### b. Underlying Incident

On September 5, 2009, at approximately 2:25 am, Plaintiff was released from police custody by P.O. Crichton and P.O. Graner. (Defs' Statement of Undisputed Material Facts, Dkt No. 39-1 [herainfter Defs' SOF] ¶ 1; Pl.'s Response to Defs' Statement of Undisputed Material Facts, Dkt No. 40 [hereinafter Pl. Resp. to Defs' SOF] ¶ 1; Complaint of Incident Report, Dkt No. 39, Ex. 1 [hereinafter Incident Rpt];[1] Philadelphia Police Dep't Investigation Rpt, Dkt No.

---

[1] The Court notes that this attachment is entirely illegible. Given that the Court cannot independently review it, the Court will only cite to it to the extent that both parties agreed to its contents.

2

40, Ex. D [hereinafter Investigation Rpt].) During and after his release from police custody, Plaintiff interacted with P.O. Crichton. (Defs' SOF ¶ 2; Pl. Resp. to Defs' SOF ¶ 2; Brent Collinson Dep., Jan. 19, 2012, Dkt No. 40, Ex. A [hereinafter Collinson Dep.] 25:16-26:24; John Crichton Dep., Jan. 13, 2012, Dkt No. 40, Ex. R [hereinafter Crichton Dep.] 9:2-12:22, 37:7-39:12, 42:3-44:19, 54:22-55:12, 56:3-60:7; David Graner Dep., Dkt No. 40, Ex. S [hereinafter Graner Dep] 13:10-17:8, 29:30-31:15, 45:17-52:4.)

What transpired between P.O. Crichton and Plaintiff after Plaintiff's initial release and prior to his eventual arrest remains disputed. As a result of this interaction, Plaintiff suffered a left elbow fracture. (Defs' SOF ¶ 2; Pl's Resp. to Defs' SOF ¶ 2.)

The police paperwork regarding this incident between P.O Crichton and Plaintiff indicates only P.O. Graner as a witness to the incident. (Investigation Rpt; (Philadelphia Police Dept Use of Force Rpt Regarding John Crichton, Dkt No. 40, Ex. E; (Philadelphia Police Dept Use of Force Rpt Regarding David Graner, Dkt No. 40, Ex. G; Philadelphia Police Dept Arrest Rpt, Dkt No. 40, Ex. K [hereinafter Arrest Rpt]; Investigation Interview Record, Dkt No. 40, Ex. M [hereinafter Invest. Interview Record.] at 1-2.) In the earlier, related case, Defendants City of Philadelphia and P.O. Crichton identified P.O. Crichton and P.O. Graner as the only witnesses in both their initial disclosure and in their responses to Plaintiff's first set of interrogatories. (Defs' Initial Disclosures, Case No. 11-3905, Dkt No. 40, Ex. N, ¶ 1; Defs' Resp. to Pl's Interrogatories, Dkt No. 40, Ex. P, ¶ 1.) Moreover, in his initial deposition, P.O. Crichton stated that he did not think that there were any other witnesses to the incident. (Crichton Dep. 30:4-32:11.)

However, in fact, several Philadelphia Police Officers observed the incident between P.O. Crichton and Plaintiff, including Lt. Gross, P.O. Collier, and P.O. Taylor. (Defs' SOF ¶ 4; Pl's Resp. to Defs' SOF ¶ 4; Investigation Rpt; Michael Gross Dep., Sept. 20, 2012, Dkt No. 40, Ex. F [hereinafter Gross Dep.] 10:9-11, 10:19-13:22, 22:3-25:23, 39:20-42:1, 59:4-14; Shawneir Collier Dep., Sept. 20, 2012, Dkt No. 40, Ex. J [hereinafter Collier Dep.] 10:11-13:18; Crichton Dep. 9:12-10:9.) Lt. Gross witnessed the whole interaction, including the arrest. (Gross 11:4-12:7.) P.O. Collier and P.O. Taylor did not witness any physical interaction between Plaintiff and P.O. Crichton and did not witness the arrest. (Collier Dep. 12:1-17.)

3

It remains disputed why these officers did not appear on earlier paperwork. However, of note, Lt. Gross stated the following in his deposition in response to the question, "Why aren't you listed as a witness to the use of force on Officer Crichton's use of force report?":

> The department's overtime management policy dictates that I'm not supposed to place myself into the position where I'm going to be called to court…And that's the overtime management policy. I'm not to put myself in the position that I have to testify. So I do not routinely get interviewed by detectives, and I do not routinely get entered as a witness unless I'm the actual arresting officer, which has happened…They don't want me going to court or any other supervisor, for that matter. They don't want us jumping on every case. Therefore, they don't want us jumping on any case.

(Gross Dep. 45:1-24, 46:5-7.) Lt. Gross further stated that the overtime policy was "why" he didn't get interviewed by detectives about the incident. (Gross Dep. 47:1-9.) Later in his deposition, Lt. Gross clarified that he:

> probably should appear [on the use of force report] as a witness. There's nothing that would have prevented me from entering my own name here….I either missed that or glossed over it when I was approving it. There's nothing to prevent me from writing my name there. I probably should have wrote my name there. As far as getting interviewed in this matter by the detectives, that's not something [the police commissioner] would like me to do.

(Gross Dep. 55:2-19.)

### c. Policy

Plaintiff's claims concern a 2009 Philadelphia Police Department Overtime Management Memorandum (09-01) dated January 28, 2009 ("the Policy") which states the following: "Platoon commanders will be required to review and initial all arrest and investigative reports, including [Preliminary Arraignment Reporting System] reports, to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed." (AC ¶ 1, Ex. A [hereinafter Policy].[2]) In the Standard Operating Procedure ("SOP") that implements the Policy, required that "only those officers necessary for prosecution will be subpoenaed to court…" (Standard Operating Procedure Overtime Management & Reduction, Dkt No. 40, Ex. I [hereinafter SOP].) Throughout this Memorandum of Law, the Court will refer to both procedures jointly as "the Policy."

---

[2] The Policy is also attached to Plaintiff's Response to Defendants' Motion to Dismiss at Ex. H.

4

### III. Discussion

#### a. Only claims against Lt. Gross and P.O. Graner in their individual capacities survive.

##### i. Legal Standard

In a civil rights case brought pursuant to 42 U.S.C. § 1983, Plaintiff must show that the Defendant, acting under the color of state law, deprived him of "rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535 (1981). An individual state actor is liable under section 1983 only where he or she played an "affirmative part" in the alleged misconduct. *Mason v. City of Philadelphia*, 2014 WL 4722640, at *5 (E.D. Pa. 2014) (citing *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (internal citations omitted)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt,* 451 U.S. at 537 n. 3).

##### ii. Analysis

Plaintiff brings excessive force claims against all named Defendants in their individual capacities.[3] While Plaintiff only alleges physical contact by P.O. Crichton, other officers who witnessed the physical contact by P.O. Crichton may be liable for P.O. Crichton's use of excessive force due to bystander liability. The Third Circuit has held that a state officer can be held liable "if the [officer] had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). The "officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 61; *see also Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986). In general, officers should take reasonable steps to protect a victim from another officer's excessive force. *Adams v. Officer Eric Selhorst*, 449 F. App'x 198 (3d Cir. 2011) (non-precedential).

---

[3] Insofar as any claims against the named Defendants in their official capacities existed, such claims are all dismissed. "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell,* local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (citing *Monell v. Dept. of Soc. Srvs of City of New York*, 436 U.S. 658, 690 n. 55 (1978)). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165-66 (quoting *Monell,* 436 U.S. at 690, n. 55); *see also Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122, 130 (3d Cir. 1985). Thus, claims against Cmmr Ramsey in his official capacity and P.O. Ashburn in his official capacity fail as a matter of law. *Accord Munson v. City of Philadelphia*, 2009 WL 2152280, at *4 (E.D. Pa. 2009).

P.O. Graner and Lt. Gross witnessed the full incident. Here, there are material and genuinely disputed facts as to whether (1) there was excessive force used against Plaintiff by P.O. Crichton, and (2) whether P.O. Graner or Lt. Gross had the opportunity to intervene and prevent a possible violation of Plaintiff's rights. Summary judgment as to these officers is therefore denied.

P.O. Collier and P.O. Taylor only witnessed the beginning part of the incident. P.O. Collier testified that she and P.O. Taylor saw Plaintiff leave the precinct. (Collier Dep. 12:1-7.) At that point, P.O. Collier testified that "Crichton and Graner, they was [*sic*] just standing there. And [Plaintiff's] still – he's in the street. He's on Winter Street in the street…And the next thing we know, we see a crate, a crate – he threw a crate…And that's when…[P.O.] Taylor [and I]…left. It was like, oh, it's time to go. We left." (Collier Dep. 12:8-17.) Thus, P.O. Collier and P.O. Taylor did not view the part of the incident that is disputed, which is P.O. Crichton's physical contact with Plaintiff. Claims against P.O. Collier and P.O. Taylor are dismissed with prejudice.

Finally, Sergeants John McGrath and Anthony Burton, Corporal Thomas Young, P.O. Ramriez and P.O. Maiorano did not witness Plaintiff's interaction with P.O. Crichton. These claims are dismissed with prejudice.

### b. Qualified Immunity

The "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is the Police "[D]efendants' burden to establish that they are entitled to such immunity." *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 726 (3d Cir. 1989). Courts have also specified that "government officials are immune from suit in their individual capacities unless, taken in the light most favorable to the party asserting the injury, (1) the facts alleged show the officer's conduct violated a constitutional right and (2) the right was clearly established at the time of the objectionable conduct." *Gerhart v. Pennsylvania*, 2009 WL 2581715, at *11 (E.D. Pa. 2009). Plaintiff's right to be free from unreasonable force and assault and to be reasonably protected by another officer were clearly established laws and the officers should "reasonably be expected to anticipate subsequent legal developments." *Harlow*, 457 U.S. at 818; *see also Grant v. City of*

*Pittsburgh*, 98 F.3d 116 (3d Cir. 1996) ("[W]hether a reasonable public official would know that his or her *specific conduct* violated clearly established rights"). "[W]hen qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." *Monteiro v. City of Elizabeth,* 436 F.3d 397, 405 (3d Cir. 2006).

The facts as viewed in the light most favorable to the Plaintiff demonstrate that the remaining officers' conduct potentially violated a constitutional right during the arrest. Qualified immunity is not appropriate at this stage.

### c. The City of Philadelphia cannot be held liable in this case.

#### i. Legal Standard

Municipal liability arises under section 1983 only when a constitutional deprivation results from an official policy or custom. *Monell v. Dept. of Soc. Srvs of City of New York*, 436 U.S. 658, 691-94 (1978). Under *Monell*, a plaintiff can show that a policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Municipalities may be vicariously liable under section 1983 for the torts of their employees in one of three ways:

> (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity;
>
> (2) the individual himself has final policy-making authority such that his conduct represents official policy; or
>
> (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

*Stevens v. Borough*, 2013 WL 2292047, at *2 (E.D. Pa. 2013) (quoting *Hill v. Borough of Kutztown,* 455 F.3d 225, 245 (3d Cir. 2006)).

To prevail on a claim under section 1983, a plaintiff must establish that he was deprived of a constitutional right. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011). The municipal policy must be "the moving force of the constitutional violation." *Polk County v. Dodson*, 454 U.S. 312, 326 (1981). To establish causation, "there must be an affirmative link between the policy and the particular constitutional violation alleged." *City of Okl. City v. Tuttle,* 471 U.S. 808, 823 (1985).

ii. **Analysis**

In the Amended Complaint, Plaintiff alleges two claims against the City. In Count I, Plaintiff alleges that the City has "encouraged, tolerated, [etc.]" (1) the use of excessive force, unlawful detention, and false arrest, (2) incomplete police paperwork, (3) the exclusion of the identifies of police witnesses; and (4) a culture of tolerance of this "unlawful conduct." (AC ¶ 54.) Plaintiff further alleges that the City failed to properly sanction the officers who committed such aforementioned constitutional violations. (AC ¶ 55.) In Count II, Plaintiff alleges that the Policy improperly withholds "exculpatory evidence from police reports" depriving defendants of their Fourth, Fifth, Sixth, and Fourteenth Amendment rights. (AC ¶ 58.)

Plaintiff has sufficiently pointed to two procedures, collectively "the Policy," that were adopted by the City. (Policy; SOP.) There is no actual material dispute of fact that Police Commissioner Ramsey promulgated the Policy, that it was widely adopted by the Department, and roundly enforced.

The Court next must address whether Plaintiff has pled an underlying constitutional violation. Plaintiff's Amended Complaint alleges two main theories of liability: (Count I) the Policy caused P.O. Crichton to use excessive force against Plaintiff, and caused the other named officers to fail to intervene, (Count II) the Policy led to the exclusion of police witnesses from police paperwork which impeded Plaintiff's constitutional rights related to both (a) his criminal defense and (b) his prosecution of a civil claim against the police department. The Court will address each theory individually.

1. **Count I**

Plaintiff alleges that "the Policy also results in a systemic failure to train, supervise, and/or discipline police officers because it affects, among other things, the Police Department Internal Affairs Bureau's ("IAB") review of an officer's use of force." (AC ¶ 2.) Plaintiff argues that "[because] the Police Department implemented the Policy, which encourages the concerted action of police officers in an effort to withhold material information from the IAB and Citizens, the Police Department adopted, encouraged, and/or, ratified the use of force." (AC ¶ 3.) Thus,

Plaintiff is alleging two distinct theories: (1) that the Policy represents a failure to train and discipline, and (2) that the Policy itself encourages the use of excessive force.[4]

First, the Third Circuit has held that "a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone,* 159 F.3d 120, 127 (3d Cir. 1998) (citing *Bonenberger v. Plymouth Twp.,* 132 F.3d 20, 25 (3d Cir. 1997)). In order for a municipality's failure to train to be actionable under section 1983, however, it must amount to "deliberate indifference" to the rights of the persons with whom police officers come into contact, and it must be shown to be a part of city policy. *City of Canton v. Harris*, 489 U.S. 378, 389-390 (1989). To establish the requisite "deliberate indifference," there must be proof of "a pattern of underlying constitutional violations." *Carswell v. Borough of Homestead,* 381 F.3d 235, 244 (3d Cir. 2004). The plaintiffs "must also show that a reasonable municipal policymaker had knowledge of prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question." *Lazarde v. City of Reading*, 2012 WL 4473246, at *4 (E.D. PA. 2012) (internal citation omitted).

The Court has previously held that Plaintiff failed to show that the policymaker in question, Commissioner Ramsey, acted with deliberate indifference. (Dkt No. 26 at 9.) The Court granted Plaintiff leave to amend his Amended Complaint, but Plaintiff chose not to do so. Moreover, the Policy does "not govern investigating, training, supervising, and/or disciplining…[and Plaintiff has] failed to show a causal link with any other [training] policy." *Whitehead v. City of Philadelphia*, 2014 WL 657486 (E.D. Pa. 2014). Plaintiff cannot sustain this claim. Thus, the Court grants summary judgment as to Plaintiff's failure to train theory.

Second, Plaintiff alleges that the Policy directly led to the use of excessive force. This theory of liability was not alleged in *Whitehead*. Plaintiff must show that the named officers

---

[4] The Court notes for clarity that there is no constitutional right to a police investigation. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768 (2005). Thus, Plaintiff cannot base a claim on any alleged underlying constitutional injury that the IAB review process was not comprehensive enough as to his claim.

9

"acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity." *Hill,* 455 F.3d at 245. Plaintiff has pointed to both a formal government policy and a standard operating procedure. The question becomes whether or not the named officers "acted pursuant" to the Policy.

Defendants argue that Plaintiff has not "plausibly suggested or evinced evidence that the overtime management policy caused Defendant Crichton to violate Plaintiff's constitutional rights. Defendant Crichton could have used force, excessive or otherwise, on Plaintiff regardless of whether the City had instituted the overtime management policy." (MSJ at 7-8.) The Court agrees. There is no testimony or evidence to suggest that the Policy in any way informed P.O. Crichton's actions. In fact, the deposition testimony demonstrates the opposite. Plaintiff's theory depends on P.O. Crichton using excessive force due to his understanding that any witness would not be included on the police reports. However, P.O. Crichton testifies that he believed that P.O. Graner was the only witness to the incident. (Crichton Dep. 30:4-32:11.) P.O. Graner was listed on all police paperwork. Thus, the Policy did not prevent P.O. Crichton from listing the only witness to the incident of which he was aware. These facts invalidate any theory that P.O. Crichton acted because he believed the Policy would prevent other witnesses to his alleged police brutality from coming forward. The Court cannot find any plausible connection between P.O. Crichton's alleged use of excessive force and the Policy.

Similarly, Plaintiff has not shown that there was a causal connection between the Policy and P.O. Graner's or Lt. Gross's failure to intervene. As previously addressed, P.O. Graner is listed on all paperwork. In contrast, Lt. Gross testified that he was not listed on the paperwork because of the Policy and the SOP. (Gross Dep. 45:12-15.) Plaintiff argues that P.O. Gross's failure to be listed on the paperwork also shows a failure to intervene upon seeing the use of excessive force. The Court certainly finds a well pled causal connection between the Policy and the failure for Lt. Gross to be listed on the police paperwork. However, the Court cannot find a causal link between Lt. Gross's alleged failure to intervene and the Policy. The Court cannot make the fraught conceptual leap from a failure to be listed on the police paperwork to causing a failure to intervene. The Policy does not outright abrogate an officer's duty to intervene. Moreover, there is no testimony that Lt. Gross's alleged failure to intervene was in any way caused by the Policy.

Further, the Court cannot find support for this failure to intervene theory in the testimony of P.O. Collier. In his Response to the Motion for Summary Judgment, Plaintiff argues that P.O. Collier's statement that the Policy made her and P.O. Taylor leave the scene demonstrates that the Policy encourages officers to fail to intervene when viewing police brutality. P.O. Collier's testimony was that when she and P.O. Taylor saw Plaintiff throw a milk crate, they decided that it was time to go. (Collier 12:13-17.) P.O. Collier did not testify to seeing any physical interaction between Plaintiff and P.O. Crichton. P.O. Collier's testimony was not that she and P.O. Taylor left upon seeing P.O. Crichton use force. Rather, it was *Plaintiff*'s behavior that caused P.O. Collier to leave. Given that P.O. Collier and P.O. Taylor did not see any behavior that arguably required intervention, the Policy, likewise, cannot be said to have encouraged their lack of intervention. Simply put, there is no evidence that the Policy caused them to condone excessive force by leaving a scene upon seeing police brutality. In this case, they left prior to any alleged use of excessive force. The Court cannot find any evidence linking the Policy to a failure to intervene by any of the officers. Summary judgment is therefore granted as to claims against the City of Philadelphia on the theory that the Policy led to the use of excessive force.

### 2. Count II

Plaintiff alleges that due to the Policy, "[c]itizens accused of crimes may never learn the existence of, let alone, the identity of police witnesses who can help their defense." (AC ¶ 1.) Plaintiff alleges that "[b]y adopting a policy that withholds exculpatory evidence from police reports[,] defendants will continue to deprive plaintiff and others who may come into contact with police of rights guaranteed by the Constitution…" (AC ¶ 60.) Plaintiff alleges violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights.[5] In Plaintiff's Response to Defendant's Motion, Plaintiff argues that the Policy necessarily led to P.O. Collier and other police witnesses to the incident, being deliberately excluded from police paperwork. (Defs'

---

[5] As a preliminary matter, Plaintiff has not alleged a violation of his Fifth Amendment rights. "[D]ue process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials." *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (non-precedential) (citing *Riley v. Camp*, 130 F.3d 958, 972 n. 19 (11th Cir. 1997)); *see also Beahm v. Burke*, 982 F.Supp.2d 451, 458 (E.D. Pa. 2013). The Defendants are state employees, not federal officials. These claims are dismissed. "The rights secured to individuals by the Fifth Amendment are generally applicable against states only through the Fourteenth Amendment." *Robinson v. Vaughn*, 1993 WL 451495, at *5 (E.D. Pa. 1993). Insofar as any of Plaintiff's allegations concern due process allegations, the Court addresses them in its Fourteenth Amendment analysis herein.

11

Resp. at 26-27.) Plaintiff alleges that this deliberate exclusion amounts to spoliation of evidence needed for (1) defense in Plaintiff's criminal charges, and (2) prosecution of this present civil case. (Defs' Resp. at 27.)

The Court will draw the inference in favor of Plaintiff that the Policy directly led to the exclusion of various police witnesses from the police paperwork. The question remains, however, whether or not Plaintiff suffered any constitutional violations in either his criminal defense or this civil prosecution by having the names of police witnesses withheld.

First, as to the deprivation's effect on his criminal defense, Plaintiff faces a Catch 22. "To succeed on such a claim under § 1983, he would have to show that Defendants deprived him of material, exculpatory evidence. *See Brady v. Maryland,* 373 U.S. 83 (1963). However, if he made such a showing, it would imply the invalidity of his conviction and bar him from relief. *See Heck v. Humphrey,* 512 U.S. 477, 487 (1994)." *Wells v. Dist. Attorney's Office of Phila. Cnty.*, 266 F. App'x 187, 188-89 (3d Cir. 2008) (non-precedential). Thus, the Court dismisses any claims relating to the effect of the withholding of allegedly exculpatory evidence on Plaintiff's criminal defense.[6]

Second, the Court addresses whether the alleged deprivation's effect on his *civil* case could result in a cognizable constitutional violation.[7] Plaintiff argues that "[m]eaningful access to the courts should not require luck…However, the Policy and the SOP usurp the rules and

---

[6] The Court notes that this holding is in congruence with the Court's earlier Order and Memorandum of Law dated October 18, 2013, denying Defendants' Motion to Dismiss. (Dkt No. 10.) In that Opinion, the Court found that the doctrine of *Heck v. Humphrey* did not bar Plaintiff's "§ 1983 claims for use of excessive force and for an improper policy that encourages this behavior and 'manipulates the system' to withhold material information and evidence from plaintiff suing the City and its officers." (Dkt No. 10 at 9.) In that Opinion, the Court did not address Plaintiff's claims regarding the impact of the withholding of the officers' names from police paperwork on his criminal defense. Addressing such issue for the first time, the Court finds that the doctrine of *Heck v. Humphrey* does bar that theory of liability.

Further, the Court's holding does not conflict with its holding in a previous case regarding this same Policy in *Ballard v. City of Philadelphia*, 2015 WL 1636878 (E.D. Pa. 2015). In *Ballard*, this Court found that Plaintiff's theory that the Policy led to the exclusion of exculpatory evidence from the probable cause determination process survived a Motion for Judgment on the Pleadings. *Id.* at *4-*5. Such a theory of liability was not alleged in this case.

[7] The Court notes that it did not address this question in its previous Order and Memorandum of Law dated October 18, 2013. (Dkt No. 10.) Defendants moved to dismiss Plaintiff's section 1983 claim only on the grounds that Plaintiff lacked standing. (Dkt No. 6 at 11-14.) Defendant's Motion to Dismiss did not reach the merits of the argument that withholding exculpatory evidence during a criminal case could cause a constitutional violation as to a defendant's right to mount a civil case. Thus, the Court's Opinion did not address such arguments. The Court addresses such arguments now.

cause spoliation of evidence at inception." (Pl. Resp. at 27.) However, Plaintiff fails to point to which "rules" are usurped, or any constitutional right that has been directly violated. The Court cannot find one either.

First, Plaintiff cannot sustain a Sixth Amendment claim under this theory. The Sixth Amendment applies only in the criminal setting. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Kirby v. Illinois*, 406 U.S. 682, 690 (1972) (holding that the Sixth Amendment guarantees only apply to "criminal prosecutions").

Second, Plaintiff cannot sustain a Fourth Amendment claim. Plaintiff has not alleged any liberty or property interest that was infringed by Defendants' actions. The Court cannot find, and Plaintiff has not provided, any case where a civil plaintiff successfully alleged a Fourth Amendment violation due to an opposing party/governmental body withholding evidence.

Third, Plaintiff's claim uses the language of First and Fourteenth Amendment "access to courts" claims. Such claims are found in the prisoner context. *See, e.g.*, *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008); *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The Court can find no example, and Plaintiff has provided none, where a non-prisoner was able to allege a First Amendment access-to-courts violation due to an opposing party's withholding of evidence in a civil case.

Thus, the Court cannot find any theory by which Plaintiff can sustain a claim regarding the effect of the withholding of information. Summary judgment is granted as to all of Plaintiff's claims against the City of Philadelphia.

## IV.    Conclusion

The Court GRANTS Defendants' Motion for Summary Judgment, (Dkt No. 40), as to Plaintiff's claims against Defendant City of Philadelphia. The City of Philadelphia is DISMISSED as a Defendant in this case. The Court GRANTS Defendants' Motion for Summary Judgment, (Dkt No. 40), as to Plaintiff's section 1983 claims against Defendants P.O. Shawnier Collier, P.O. Kenneth Taylor, Jr., Sgt. John McGrath, Sgt. Anthony Burton, Cpl. Young and P.O. Salvatore Maiorano. The Court DENIES Defendants' Motion for Summary Judgment, (Dkt No. 40), as to Plaintiff's section 1983 claims for excessive force by way of bystander liability against Defendants P.O. David Graner and Lt. Gross.

Defendants did not move for summary judgment as to any state claim. Thus, all Defendants remain in the case as to the state claims alleged. In addition, Defendants did not move for summary judgment on section 1983 claims against P.O. Crichton. Those claims remain.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.